318                           439 Mass. 318 (2003)

Massachusetts Insurers Insolvency Fund *v.* The Premier Insurance Company of Massachusetts.

## MASSACHUSETTS INSURERS INSOLVENCY FUND *vs.* THE PREMIER INSURANCE COMPANY OF MASSACHUSETTS.

Suffolk. March 6, 2003. - May 2, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Insurance,* Motor vehicle insurance, Uninsured motorist, Motor vehicle exclusion, Construction of policy, Insolvency of insurer. *Contract,* Insurance. *Massachusetts Insurers Insolvency Fund.*

An insurance company (insurer) had no obligation to provide uninsured motor vehicle benefits to a claimant household member (wife) under a policy issued by the insurer and purchased by her husband, where the wife had held her own automobile insurance policy at the time she was injured in an automobile collision, but, because of her insurer's insolvency, did not hold a policy when she filed a claim with her husband's insurer; consequently, responsibility for payment fell to the Massachusetts Insurers Insolvency Fund under G. L. c. 175D, §§ 5, 9. [320-323]

CIVIL ACTION commenced in the Superior Court Department on February 28, 2001.

The case was heard by *Allan van Gestel,* J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*William P. Hurley* for the defendant.

*David B. Mack (Joseph C. Tanski* with him) for the plaintiff.

COWIN, J. This is an appeal by the defendant, The Premier Insurance Company of Massachusetts (Premier), from the Superior Court's grant of summary judgment for the plaintiff, the Massachusetts Insurers' Insolvency Fund (Fund).[1] We granted Premier's application for direct appellate review to

---

[1]The Fund is a legal entity created by statute to pay claims of insolvent insurers. See G. L. c. 175D, § 3; *Clark Equip. Co.* v. *Massachusetts Insurers Insolvency Fund,* 423 Mass. 165, 166-167 (1996). Payments made by the fund are assessed to a variety of insurers doing business in the Commonwealth. See *id.*

decide whether it is obligated to provide uninsured motor vehicle (UM) benefits in this matter, and we hold that no such obligation exists.

The facts are undisputed. On March 12, 2000, an automobile owned and operated by Virginia deMedeiros (Virginia) collided with a vehicle operated by Kevin McKenzie (McKenzie). For purposes of this motion, both parties agree that Virginia was injured and McKenzie was responsible. At the time of the accident, both Virginia and McKenzie held automobile insurance policies issued by the Trust Insurance Company (Trust). Virginia was also covered under the household member provision of an automobile insurance policy issued by Premier and purchased by her husband, Manuel deMedeiros (Manuel). Both policies provided UM coverage as required by law. See G. L. c. 175, § 113L.

Trust was declared insolvent as of August 2, 2000, rendering McKenzie's vehicle uninsured. See *Massachusetts Insurers Insolvency Fund* v. *Safety Ins. Co.*, ante 309, 310 (2003). Following this declaration, Virginia submitted a claim to Premier for UM benefits under Manuel's policy. Premier denied the claim on the grounds that Virginia had her own automobile insurance (the Trust policy) at the time of the accident, and that the terms of Manuel's insurance contract allowed Premier to deny coverage to household members with their own automobile insurance. At Premier's suggestion, Virginia then filed a claim with the Fund, which, in turn, brought this declaratory action against Premier. The Superior Court, holding that Manuel's policy required Premier to pay UM benefits because Trust was insolvent when Virginia filed her claim, granted summary judgment for the Fund.

Premier and the Fund each assert that the other is responsible for Virginia's UM coverage. Premier's obligations are defined by the text of the policy that it issued to Manuel, which functions as a contract. See *Hakim* v. *Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 280 (1997); *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982), quoting *MacArthur* v. *Massachusetts Hosp. Serv., Inc.*, 343 Mass. 670, 672 (1962). The responsibilities of the Fund, on the other hand, are controlled by G. L. c. 175D. That statute obligates the Fund

to pay "covered claims against [an] insolvent insurer existing prior to the declaration of insolvency." G. L. c. 175D, § 5 (1) (a).[2] The Fund points out, correctly, that this obligation is limited by G. L. c. 175D, § 9. According to that provision, before the Fund can provide benefits, "[a]ny person having a claim against his insurer under any insolvency provision in his insurance policy which is also a covered claim shall be required to exhaust first his right under such policy." Thus, according to the Fund, Virginia must exhaust the UM coverage provided by her husband's policy before the Fund's obligation to pay can be triggered. Premier counters that the UM section of Manuel's policy contains an exclusion stating that "[Premier] will not pay damages to or for any household member who has a Massachusetts auto policy of his or her own." Therefore, in Premier's view, because Virginia had her own "auto policy" at the time of the accident, there is no UM coverage under Manuel's policy for Virginia to exhaust.[3]

We must decide, then, whether the exclusion contained in Manuel's policy entitles Premier to deny coverage to Virginia. The unambiguous language of an insurance exclusionary clause must be given its usual and ordinary meaning. See *Hakim* v. *Massachusetts Insurers' Insolvency Fund, supra* at 281. In most circumstances, the meaning of the exclusion at issue here is obvious: if a household member has an automobile insurance policy, Premier need not pay such household member UM benefits. In this case, however, that exclusion's applicability is less clear. The policy is silent on the question when, precisely, a household member's possession of an insurance policy triggers a denial of UM coverage. That omission creates a problem here because Trust, Virginia's own insurer, was declared insolvent after the accident but before Virginia filed her claim. That declaration had the effect of cancelling her insurance policy. See *Matter of the Liquidation of Am. Mut. Liab. Ins. Co.*, 434 Mass. 272, 295-296 (2001); *Commissioner of Ins.* v. *Mas-*

---

[2]A "[c]overed claim" is an unpaid claim, subject to certain limitations, made under a policy issued by an insurer "which has become an insolvent insurer." G. L. c. 175D, § 1 (2). The question whether Virginia's claim is a "[c]overed claim" is not before us.

[3]Because we agree with Premier's interpretation of this exclusion, we need not address its alternative arguments.

*sachusetts Acc. Co.*, 314 Mass. 558, 564-565 (1943). We are thus faced with a claimant household member who held an automobile insurance policy at the time of the accident, but, because of the insurer's insolvency, did not hold an insurance policy when the claim was filed with her husband's insurer. The policy language itself gives no guidance as to whether Premier is obligated to provide benefits in such a situation.

Ordinarily, ambiguities in an insurance exclusionary provision are resolved against the insurance company. See *Hakim* v. *Massachusetts Insurers' Insolvency Fund, supra* at 281-282. That presumption does not apply here because the wording of a Massachusetts automobile policy is drafted by the Commissioner of Insurance (commissioner) rather than the contracting insurer. See *Goodman* v. *American Cas. Co.*, 419 Mass. 138, 140 (1994). We are therefore left to choose between two plausible interpretations. We can either adopt the suggestion of Premier and read the policy to exclude coverage for a household member who has an insurance policy when the accident occurred, or we can adopt the Fund's interpretation and hold that a household member's insurance status is determined when the claim is filed.

We conclude that the standard policy must be read to exclude UM coverage for a household member who has an insurance policy at the time of the accident. While the Fund contends that this conclusion would "add language" to the standard policy, we believe that a focus on the coverage held at the time of the accident is implicit in the policy language. We last interpreted this portion of the standard policy in *Goodman* v. *American Cas. Co., supra*, where we held that the provision at issue here was intended to provide coverage of last resort to household members with no automobile insurance of their own, and was not designed to either supplement or replace policies held by household members. See *id.* at 140-141. Thus, persons damaged by uninsured motorists may only recover under their own policy, even though, if they themselves had been uninsured, they might have recovered more under a household member's policy. *Id.*

The reading advanced by the Fund would circumvent this intended result. Were we to hold that an insurance provider

could only deny coverage to a household member who was uninsured at the time of the claim, persons struck by uninsured motorists would be able to select the UM provision of a household member over the UM provision in their own insurance policies simply by cancelling their own policies prior to filing their claims with the household member's insurer. Such persons would have no automobile insurance at the time of filing, and, according to the Fund's interpretation, the household member's insurance company would be obligated to pay their UM claims. Because such an outcome would render the exclusion language drafted by the commissioner so manipulable as to be virtually meaningless, we must reject it. See *National Shawmut Bank* v. *Joy*, 315 Mass. 457, 466 (1944) ("It is a canon of construction that every word and phrase of an instrument is if possible to be given meaning"); *Cadle Co.* v. *Vargas*, 55 Mass. App. Ct. 361, 366 (2002), quoting *Fishman* v. *LaSalle Nat'l Bank*, 247 F.3d 300, 302 (1st Cir. 2001) ("Common sense is as much a part of contract interpretation as is the dictionary or the arsenal of canons").[4]

Had the commissioner intended the standard policy's UM provision to extend to a household member whose own insurer becomes insolvent at some point after an accident, that requirement would have been stated clearly. The standard policy does include an explicit provision invoking UM coverage where the company insuring the responsible automobile becomes insolvent before paying a claim. This provision appears on the same page as the clause providing UM coverage to household members, and extending the former to cover the latter would have entailed nothing more than a minor editorial addition. Instead, both the provision and the statute on which it is based expressly state that UM coverage is triggered only when the responsible

---

[4]The Fund's focus on insurance held at the time of the claim, rather than on the insurance coverage in effect at the time of the accident, would also produce other anomalous results. For example, if Virginia's husband had owned the vehicle and Virginia had not held an insurance policy when the accident occurred, but purchased one before filing her claim with Premier, she would be ineligible to receive UM coverage under either policy. Her new insurance would not cover her because the accident occurred before the policy came into effect, and the Premier policy would not cover her because she held her own insurance policy at the time of the claim.

vehicle's insurer has become insolvent.[5] The limited nature of the exception thus suggests strongly that the commissioner did not intend to extend household member UM coverage to situations where the injured party's own insurer (as opposed to the responsible automobile's liability insurer) becomes insolvent after an accident. Although insurance provisions that are plainly expressed must be enforced, see *Gordon* v. *Safety Ins. Co.*, 417 Mass. 687, 689 (1994), those that are conspicuously absent should not be implied. See *Simmons* v. *Cambridge Sav. Bank*, 346 Mass. 327, 331 (1963), quoting *Rocci* v. *Massachusetts Acc. Co.*, 222 Mass. 336, 343 (1916) ("A policy of insurance is a written contract. Its terms are to be given a reasonable construction. Each party is entitled to have the contract interpreted according to the words used, and not stretched to include gratuities to one whose misfortune may excite sympathy").

The Fund was created to pay the claims of persons whose insurers have become insolvent when those claims are not also covered by other insurance policies. See G. L. c. 175D, §§ 5, 9. Virginia's claim is not covered by Premier's policy or any other, and the responsibility for payment falls consequently to the Fund. The order allowing summary judgment is vacated and the case is remanded to the Superior Court for the entry of a judgment declaring that Premier has no obligation to provide uninsured motorist benefits to Virginia deMedeiros.

*So ordered.*

---

[5]The relevant portion of the standard policy states: "Sometimes the company insuring the auto responsible for an accident will deny coverage or become insolvent. We consider such an auto to be uninsured for purposes of this Part." This provision tracks the language of G. L. c. 175, § 113L(1), which requires the UM provisions of all automobile insurance policies issued in the Commonwealth to "include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency."