ELENA GIVEN *vs.* COMMERCE INSURANCE COMPANY.

Bristol. March 4, 2003. - October 7, 2003.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Insurance,* Motor vehicle insurance, Amount of recovery for loss, Construction of policy, Property damage. *Motor Vehicle,* Insurance.

This court concluded that Massachusetts automobile insurers are not required to pay claims of policyholders for so-called "inherent diminished value," pursuant to part seven of the standard automobile insurance policy. [209-215]

CIVIL ACTION commenced in the Superior Court Department on January 26, 2001.

The case was heard by *Ernest B. Murphy*, J., on a motion for summary judgment, and a question of law was reported by him to the Appeals Court. The Supreme Judicial Court granted an application for direct appellate review.

*Nelson G. Apjohn* (*Augustus F. Wagner, Jr., & David O. Brink* with him) for the defendant.

*John Peter Zavez* (*Noah Rosmarin* with him) for the plaintiff.

*Thomas F. Reilly*, Attorney General, *& Daniel J. Hammond*, Assistant Attorney General, for Massachusetts Division of Insurance, amicus curiae, submitted a brief.

SOSMAN, J. After receiving payment for physical repair to her vehicle following a collision, the plaintiff, Elena Given, sought additional compensation from her automobile insurer, Commerce Insurance Company (Commerce), for her vehicle's "inherent diminished value." Her claim for inherent diminished value (the difference between the market value of her automobile immediately before the accident and its market value postcollision fully repaired) is premised on the theory that some stigma attaches to the vehicle from its involvement in a prior collision, such that its market value is diminished despite the fact that the

vehicle has been restored to its precollision physical condition. In Given's view, that diminution in value is an element of the damage she suffered from the collision and is therefore compensable under her automobile insurance policy.

When Commerce rejected her claim, Given filed a six-count complaint against Commerce in the Superior Court.[1] Commerce moved for summary judgment on all counts, contending that inherent diminished value was not compensable under the terms of the policy, and that it had fully satisfied its obligations under the policy by compensating Given for the repair of her vehicle. The judge denied Commerce's motion and sua sponte entered partial summary judgment in Given's favor, declaring Commerce liable under the policy for whatever inherent diminished value Given could prove at trial. After Commerce's motion for reconsideration was denied, the judge, at Commerce's request, reported the following question to the Appeals Court:

> "Whether Massachusetts automobile insurers must pay claims of policyholders for so-called 'inherent diminished value,' pursuant to Part 7 (Collision) coverage under the Standard Automobile Insurance Policy mandated by the Commissioner of Insurance?"

See Mass. R. Civ. P. 64, as amended, 423 Mass. 1410 (1996). We granted Commerce's application for direct appellate review, and now answer the reported question in the negative.

*Background.* The relevant facts, drawn from the judge's findings and from elsewhere in the record, are undisputed. Commerce issued Given a standard Massachusetts automobile insurance policy, sixth edition (standard policy), including optional collision coverage (part seven), for her 2000 Toyota Avalon automobile. Part seven of the standard policy provides in pertinent part that "we [the insurer] will pay for any direct and accidental damage to your [the insured's] auto caused by a collision. . . . We will pay for each loss up to the actual cash value of the auto or any of its parts at the time of the collision.

---

[1]Given alleged breach of contract, breach of implied covenant of good faith and fair dealing, fraud, negligent misrepresentation, breach of fiduciary duty, and violation of G. L. c. 93A. All theories of liability were premised on the assertion that Commerce had wrongfully refused to compensate Given for the inherent diminished value of her vehicle.

If the repair of a damaged part will impair the operational safety of the auto, we will replace the part." Paragraph eleven of the general provisions and exclusions section of the standard policy provides for appraisals of vehicles following a collision, payment of repair costs either to the insured or directly to a repair shop, and reinspection following repair. The insured may elect not to have the vehicle repaired, in which case the insurer "will determine the amount of decrease in the actual cash value of [the insured's] auto and pay [the insured] that amount less [the] deductible."[2] Paragraph eleven then specifies the following cap on payments for collision damage: "In any event, we will never pay more than what it would cost to repair or replace the damaged property."

In September, 2000, during the policy period, Given's automobile sustained collision damage. She presented a claim to Commerce, and Commerce paid $5,287 to have the Toyota repaired to Given's satisfaction. Given contends that she has sustained additional damage of $1,414.70 as a result of the alleged inherent diminished value of her Toyota.

*Discussion.* At issue in the judge's reported question is whether inherent diminished value is included within the term "direct and accidental damage to [an] auto caused by a collision," as that is the "damage" compensable under part seven of the standard policy. We interpret the words of the standard policy in light of their plain meaning, see *Hakim* v. *Massachusetts Insurers' Insolvency Fund,* 424 Mass. 275, 280 (1997), giving full effect to the document as a whole. See *J.A. Sullivan Corp.* v. *Commonwealth,* 397 Mass. 789, 795 (1986). We consider "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Hazen Paper Co.* v. *United States Fid. & Guar. Co.,* 407 Mass. 689, 700 (1990). We must also interpret the provisions of the standard policy in a manner consistent with the statutory and regulatory scheme that governs such policies. See G. L. c. 90,

---

[2]The policy also specifies that payment for that "decrease in the actual cash value," or failure to submit certification that repairs were performed after repair costs were paid to the insured, will "automatically reduce[] the actual cash value" of the vehicle for purposes of further claims. If the insured later supplies "proof of proper repair, the actual cash value will be increased."

§ 34O; G. L. c. 175, § 113B; G. L. c. 26, § 8G; 211 Code Mass. Regs. §§ 133.00 (1996); 212 Code Mass. Regs. §§ 2.00 (1996).[3] Finally, because the approved wording of the standard policy is controlled by the Commissioner of Insurance and not by any insurer (see G. L. c. 175, § 113A), we do not construe ambiguities against the insurer. See *Massachusetts Insurers Insolvency Fund* v. *Premier Ins. Co.*, 439 Mass. 318, 321 (2003); *Goodman* v. *American Cas. Co.*, 419 Mass. 138, 140 (1994).[4]

Given maintains that a straightforward interpretation of the undefined term "damage" in part seven of the standard policy implicitly obligates Commerce to compensate her for the inherent diminished value of her automobile, citing to cases standing for the proposition that diminution of market value is an appropriate measure of "damage" to property. See *Trinity Church in the City of Boston* v. *John Hancock Mut. Life Ins. Co.*, 399 Mass. 43, 48 (1987), citing *Hopkins* v. *American Pneumatic Serv. Co.*, 194 Mass. 582, 583 (1907) ("general rule for measuring property damage is diminution in market value"); *Continental Cas. Co.* v. *Gilbane Bldg. Co.*, 391 Mass. 143, 148 (1984), quoting *McDowell-Wellman Eng'g Co.* v. *Hartford Acc. & Indem. Co.*, 711 F.2d 521, 525-526 n.7 (3d Cir. 1983) ("term property damage . . . can include intangible damage such as the diminution in value of tangible property").[5] However, the

---

[3]The standard policy expressly incorporates the statutory and regulatory provisions governing automobile insurance: "There are many laws of Massachusetts relating to automobile insurance. [The parties] must and do agree that, when those laws apply, they are part of this policy."

[4]Rather than interpret the language of the standard policy in accordance with these principles, the judge reasoned that part seven must include compensation for inherent diminished value in order to satisfy the principle of "mutuality of obligation." Given herself concedes, as she must, that it was error for the judge to utilize a "mutuality of obligation" analysis in lieu of ordinary principles of contract interpretation. This court, in accordance with the view expressed in standard treatises on contract law, has long since abandoned the doctrine of "mutuality of obligation." See *Eliopoulos* v. *Makros*, 322 Mass. 485, 488 (1948), quoting S. Williston, Contracts § 141, at 508 (rev. ed. 1936). See also 2 A. Corbin on Contracts § 6.1, at 197 (rev. ed. 1995); 3 S. Williston on Contracts § 7:14 (4th ed. 1992); Restatement (Second) of Contracts § 79 (1981). We therefore proceed to interpret the policy as written, and will not subject it to any test of "mutuality."

[5]Given also cites to cases from other jurisdictions that have recognized claims for inherent diminished value. See, e.g., *State Farm Mut. Auto. Ins. Co.*

issue before us is not whether, in some other context, diminution in market value would be an appropriate method by which to calculate monetary damages for some form of injury to property.[6] Rather, the issue is whether that is the form or measure of "damage" that the standard policy is intended to cover.

Under the plain wording of the standard policy, diminution in value is the measure of "damage" to the automobile *if* the insured elects *not* to repair the vehicle ("If you choose not to have your auto repaired . . . we will determine the amount of decrease in the actual cash value of your auto and pay you that amount less your deductible"). Or, if the cost of repair would exceed the value of the vehicle prior to the collision, the insurer is obligated to pay the "actual cash value" of the vehicle as of the time of the collision, and "actual cash value" is then the measure of "damage." If, however, the insured does have the automobile repaired, and the costs of that repair are less than the vehicle's precollision value, the standard policy unambiguously provides that the insurer is obligated to pay for that repair, setting out the various steps for obtaining compensation for repair costs.[7] The policy contains no reference to paying any form of damage other than the actual repair costs in the event

---

v. *Mabry*, 274 Ga. 498, 502-508 (2001); *Senter* v. *Tennessee Farmers Mut. Ins. Co.*, 702 S.W.2d 175, 177-178 (Tenn. Ct. App. 1985). Other jurisdictions have rejected such claims. See, e.g., *Ray* v. *Farmers Ins. Exch.*, 200 Cal. App. 3d 1411, 1416-1418 (1988); *O'Brien* v. *Progressive N. Ins. Co.*, 785 A.2d 281 (Del. 2001); *Hall* v. *Acadia Ins. Co.*, 801 A.2d 993 (Me. 2002). A numerical tally of results in other jurisdictions would suggest that the current trend is to reject claims for inherent diminished value. We agree with Commerce, however, that analysis of cases on this subject from other jurisdictions is of limited utility, as the determination of what is or is not covered under an automobile policy is driven by the precise language of the policy in question and the statutory and regulatory background governing automobile insurance in that jurisdiction. Cases interpreting different policy provisions governed by different regulatory requirements shed little light on what is meant by part seven of the standard policy as governed by Massachusetts law.

[6]In both of the cases cited by Given, the property at issue was real estate, not an automobile.

[7]Paragraph eleven of the general provisions and exclusions provides that, if the insurer has an approved "direct payment plan" (see G. L. c. 90, § 34O) and the insured elects to receive payment under that plan, payment will be made directly to the insured, the insured will "select a repair shop of [the insured's] choice," and the insured will then submit a certification that the repairs have been made (plus, if requested by the insurer, make the vehicle available for a postrepair inspection). If the insurer does not have or the

that the vehicle is repaired. While Given contends that nothing in the standard policy expressly excludes compensation for inherent diminished value (a contention we do not accept, see *infra*), the issue is whether inherent diminished value is covered in the first place — absence of an express exclusion does not operate to create coverage. "Although insurance provisions that are plainly expressed must be enforced . . . those that are conspicuously absent should not be implied" (citations omitted). *Massachusetts Insurers Insolvency Fund* v. *Premier Ins. Co.*, 439 Mass. 318, 323 (2003). Under the express terms of the standard policy, Given was entitled to compensation either for diminution in value caused by the collision (if she chose not to repair her vehicle) *or* for the cost of repair (if she chose to have repairs performed). She was not entitled to both.

Any ambiguity as to whether Given was entitled to recover for inherent diminished value as part of her "damage" under part seven is resolved by the express limitation set forth in paragraph eleven of the general provisions and exclusions: "In any event, we [the insurer] will never pay more than what it would cost to repair or replace the damaged property." Having paid for the full cost of repairing the vehicle, Commerce was not obligated to pay anything more under any theory. In other words, contrary to Given's assertion, the policy expressly excludes payment of any amount higher than repair or replacement costs, and thus expressly excludes compensation for inherent diminished value when the insurer has already paid for the repair or replacement of all damaged parts of the vehicle.

Seeking to evade the clear import of this cap on Commerce's liability, Given contends that the concept of inherent diminished value is included within the term "repair or replace the damaged property," in the sense that the vehicle has not been fully "repair[ed]" or "replace[d]" when it still suffers some diminution in value even following full physical restoration. We will not torture the plain meaning of the terms "repair" and "replace" to encompass "repair" or "replace[ment]" of damage

insured does not opt to accept payment under such a plan, the insured may have the vehicle repaired in accordance with the appraisal (see 212 Code Mass. Regs. § 2.04 [1996]), submit a completed work claim form, and receive payment from the insurer within seven days. Finally, if the insured requests, the insurer "will pay the repair shop directly."

caused by stigma, a form of damage that, by definition, defies remedy by way of "repair" or "replace[ment]." There is nothing exotic about the words "repair or replace" as used in the standard policy — both words, in their ordinary usage, refer to the remedying of tangible, physical damage. See Webster's Third New Int'l Dictionary 1923 (1993) (defining "repair" as "to restore by replacing a part or putting together what is torn or broken"); *id.* at 1925 (defining "replace" as "to place again: restore to a former place, position, or condition"). No "objectively reasonable insured, reading the relevant policy language" would conclude that these terms include compensation for diminution in market value or for anything else beyond restoration of the vehicle's precollision physical condition. *Hazen Paper Co.* v. *United States Fid. & Guar. Co.,* 407 Mass. 689, 700 (1990).

Our interpretation of the standard policy is reinforced by a perusal of the relevant statutes and administrative regulations. See, e.g., G. L. c. 90, § 34O (requiring automobile insurers to provide optional collision coverage and limited collision coverage and specifying payment methods for repair costs); G. L. c. 26, § 8G (establishing licensing board for auto damage appraisers and setting requirements for such appraisals); 211 Code Mass. Regs. §§ 133.00 (standards for repair of damaged motor vehicles); 212 Code Mass. Regs. §§ 2.00 (regulations promulgated by auto damage appraisers licensing board governing appraisal and repair of damaged motor vehicles). One searches this vast network of statutory and regulatory provisions in vain for any reference to the concept of inherent diminished value — for example, it does not identify any methodology by which to calculate inherent diminished value, or any requirements for performing or documenting appraisals of inherent diminished value, or any steps to be taken to coordinate payment for inherent diminished value with the payment for the physical repairs. By contrast, the requirements for assessing physical damage to an automobile, performing repairs, replacing parts, documenting that repairs have been made, and making payment to the insured or the repair shop are detailed and specific. See, e.g., 211 Code Mass. Regs. § 133.04 (requirements for specifying repair or replacement parts); 212 Code Mass. Regs. § 2.04 (requirements

for performance of appraisal of damaged vehicle, with appraisal consisting of itemization of "the cost of all parts, labor, materials, and necessary procedures to restore the vehicle to pre-accident condition"). From the absence of any reference to inherent diminished value in this extensive regulatory scheme, it is apparent that the Commissioner of Insurance (commissioner) does not interpret the standard policy's collision coverage to encompass compensation for inherent diminished value in addition to compensation for the cost of repairs.[8] See *Colby v. Metropolitan Prop. & Cas. Ins. Co.*, 420 Mass. 799, 806 (1995) ("[commissioner] decides what the terms of a standard policy will be . . . and the commissioner's interpretation of the relevant statutes, although not controlling, is entitled to deference").

We therefore answer the reported question in the negative.

---

[8]Following the judge's ruling on summary judgment, the division of insurance issued an advisory ruling expressly addressing this issue. See G. L. c. 30A, § 8 (authorizing agencies to render advisory rulings "with respect to the applicability to any person, property or state of facts of any statute or regulation enforced or administered by that agency"). In its advisory ruling, the division announced its position that part seven of the standard policy does not, and never has, provided coverage for inherent diminished value. We reject Given's suggestion that the advisory ruling is somehow invalid or tainted by the fact that Commerce itself requested its issuance and discussed the substance of the ruling with division officials. Before us, the Attorney General has submitted an amicus brief on behalf of the division, defending the procedural propriety of the issuance of the advisory ruling. The statutory provisions allowing for the issuance of such rulings expressly provide that they will be issued on "request of any interested person" and that the agency may issue such rulings without adhering to the various procedural requirements for promulgation of regulations. G. L. c. 30A, § 8. We see no impropriety in the division's having entertained a request for an advisory ruling from Commerce and discussed its substance with Commerce, and we credit the commissioner's good faith in stating the division's position on an issue that had divided the trial court. See *Roth* v. *Amica Mut. Ins. Co., post* 1013 (2003). We also reject Given's argument that the advisory ruling is invalid, and that the division's view is entitled to no deference, because the ruling seeks to interpret the standard policy and not a "statute or regulation." G. L. c. 30A, § 8. Insurance companies are required to offer optional collision coverage as described in G. L. c. 90, § 34O, and part seven of the standard policy, which must itself be approved by the commissioner (see G. L. c. 175, § 113A), is designed to comply with that statutory requirement. In this context, the division's opinion about the meaning of terms it approved in order to comply with the underlying statutory mandate is an appropriate subject for an advisory ruling.

The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*