Fabricant, Judith, J.

INTRODUCTION

These four cases present a dispute regarding interpretation of the language of the Massachusetts Standard Automobile Policy (the standard policy) as it was applied by the four automobile insurers named as defendants, Safety Insurance Company, Metropolitan Property and Casualty Insurance Company, Massa *596 chusetts Homeland Insurance Company (the Massachusetts operating name of OneBeacon Insurance Group, LLC), and The Commerce Insurance Company (collectively, the defendants or the insurers) to the policies held by the five plaintiffs, Senia Molina, Anthony Cioffi, Janet E. Mason, Jean Metellus, and Edward P. Feener (collectively, the plaintiffs or the insureds). The plaintiffs, on behalf of themselves and those similarly situated,[3] filed these actions for breach of contract and declaratory judgment, alleging that the insurers violated the policy by making deductions from collision damage payments for so-called “betterment.”[4] The plaintiffs now move for partial summary judgment as to their contract claims. The defendants oppose and cross-move for summary judgment as to both counts of each complaint. For the reasons that will be explained, the plaintiffs’ motions for partial summary judgment will be denied and the defendants’ cross motions for summary judgment will be allowed.

BACKGROUND

The material facts are undisputed, and are similar in the four cases in all material respects. Each plaintiff purchased an automobile insurance policy from one of the defendant insurers, in the form of the standard policy, as amended.[5] Each plaintiffs vehicle was in a collision, and each plaintiff filed an insurance claim. A licensed appraiser appraised the damage to each vehicle and produced a report. In each case, the appraiser made a deduction for betterment — that is, the increase in the value of the car that would result from replacing worn parts with new parts.[6]
Plaintiff Molina owned a 2001 Acura MDX, and held a policy with Safety Insurance Company (Safety) at the time of a collision on October 5,2007. She filed a claim with Safety, and Safely sent an appraiser to evaluate the damage. In a report dated December 17, 2007, the appraiser listed forty items in need of repair or replacement and estimated the cost of the necessary work to be $2,661.62. The appraiser then adjusted that total to reflect a betterment deduction of 25% of the cost of repairing the “muffler and pipe.” A document appended to the appraisal explains that the appraiser attributed the deduction to “age and wear on [the] part.” The deduction reduced the total by $133.01 to $2,528.61. Molina chose a repair shop listed by Safety as a preferred shop and Safety made all payments directly to the shop. Despite the betterment deduction, Molina’s out-of-pocket costs amounted only to her deductible. The record does not indicate the amount Safety paid to the repair shop.
Plaintiff Cioffi owned a 1998 BMW 5281 and held a policy with Safety at the time of a collision on May 10, 2008. He filed a claim with Safety, and Safety sent an appraiser to evaluate the damage. In a report dated May 23, 2008, the appraiser listed thirteen items in need of repair or replacement and estimated the cost of necessary work to be $2,906.70. The appraiser then adjusted that total to reflect a betterment deduction of 50% of the cost of repairing the “converter and pipe.” The deduction reduced the total by $992.25 to $1,914.45. Like Molina, Cioffi chose a repair shop listed by Safety as a preferred shop and Safety made all payments directly to the shop. Despite the betterment deduction, Cioffi’s out-of-pocket costs amounted only to his deductible. The record does not indicate the amount Safety paid to the repair shop.
Plaintiff Metellus owned a 1998 BMW 5281 and held a policy with OneBeacon Insurance Group, LLC (One-Beacon) at the time of a collision on October 26, 2006.[7] Metellus filed a claim with OneBeacon, and OneB-eacon sent an appraiser to evaluate the damage. In a report dated November 1, 2006, the appraiser listed sixty-eight items in need of repair or replacement and estimated the cost of the necessary work to be $4,806.33. The appraiser then adjusted that total to reflect a betterment deduction of 20% of the cost of replacing a tire. The deduction reduced the total by $25.24 to $4,781.09. Unlike the other plaintiffs, Metellus opted to receive a check (for $4,781.09[8]), rather than have OneBeacon pay a preferred repair shop directly.
Plaintiff Mason owned a 2003 Volkswagen Passat GLX and held a policy with Metropolitan Property and Casualty Insurance Company (Metropolitan) at the time of a collision on January 28, 2008. She filed a claim with Metropolitan, and Metropolitan sent appraiser Scott Fraser to evaluate the damage. Fraser wrote two reports in connection with Mason’s claim. The first report, dated February 4, 2008, lists ninety-three items in need of repair or replacement and estimates the cost of the necessary work to be $6,305.09. Fraser then adjusted that total to reflect a betterment deduction of $249.45. The second report, dated March 19, 2008, is arevision of the earlier report and lists 103 items in need of repair or replacement. It estimates the cost of the necessary work to be $7,012.65. Fraser did not modify the betterment deduction from the original report. Mason chose a repair shop listed by Metropolitan as a preferred shop and Metropolitan made all payments directly to the shop. Despite the betterment deduction, Mason’s out-of-pocket costs amounted only to her deductible. The record does not indicate the amount Metropolitan paid to the repair shop.
The fifth plaintiff, Feener, owned a 2004 Honda Odyssey EX and held a policy with The Commerce Insurance Company (Commerce) at the time of a collision on November 4, 2007. He filed a claim with Commerce, and Commerce sent an appraiser to evaluate the damage. In a report dated November 7, 2007, the appraiser listed one hundred items in need of repair or replacement and estimated the cost of the necessary work to be $8,885.80. The appraiser then adjusted that total to reflect a betterment deduction of 35% of the cost of replacing a tire, 40% of the cost of replacing an axle, and 40% of the cost of replacing *597 a strut. The deduction reduced the total by $267.54 to $8,618.26. Feener chose a repair shop listed by Commerce as a preferred shop, and Commerce made all payments directly to the shop. Despite the betterment deduction, Feener’s out-of-pocket costs amounted only to his deductible. The record does not indicate the amount Commerce paid to the repair shop.[9]
The collision provision of the standard policy (§7 at page 16), as it read at all relevant times, states in part,
[W]e will pay for any direct and accidental damage to your auto caused by a collision. It does not matter who is at fault. We will also pay for collision damage to other private passenger autos while being used by you or a household member with the consent of the owner . . . We will pay for each loss up to the actual cash value of the auto or any of its parts at the time of the collision. If the repair of a damaged part will impair the operational safely of the auto we will replace the part.
(Emphasis in original). The standard policy also includes §9 at page 26, entitled “We Do Not Pay For Ordinary Wear Or Tear,” which states,
We will not pay for damage to your auto which is due solely to ordinary wear and tear, freezing, mechanical or electrical failure, or for ordinary road damage to tires.
We will, however, pay for this damage if it is the result of some other loss which is covered by this policy.
(Emphasis in original.)
In 1994, the Commissioner of Insurance issued a memorandum recommending to insurers that they notify claimants of the following when providing lists of preferred repair shops:
You may choose a referral shop from the enclosed list. If you do, we will guarantee the materials and workmanship of the repair and the cost to you will usually not exceed our payment plus the amount of your deductible, you [sic] are responsible for any costs resulting from the use of parts that are of better quality than the parts that were on your auto at the time of the accident. (Referred to as a betterment or depreciation on the appraisal.)

DISCUSSION

The plaintiffs argue that §7 of the standard policy requires the insurers to pay the full cost to repair damage resulting from collision, including any necessary replacement parts, even if such payment increases the value of the vehicle, and that the standard policy does not permit any deduction for betterment. The insurers contend, to the contrary, that §7 expressly permits — indeed, requires — betterment deductions.
The dispute depends on interpretation of the standard policy. Interpretation of an insurance policy is a question of law appropriate for resolution on summary judgment. See Cabot Corp. v. AVX Corp., 448 Mass. 629, 636-37 (2007); Mass.R.Civ.P. 56(c). The Court must interpret the words of the standard policy in light of their plain meaning. Given v. Commerce Ins. Co., 440 Mass. 207, 209 (2003), citing Hakim v. Massachusetts Insurers Insolvency Fund, 424 Mass. 275, 280 (1997). The Court considers “what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.” Given, supra, quoting Hazen Paper Co. v. United States Fid & Guar. Co., 407 Mass. 689, 700 (1990). Because the wording of the standard policy is controlled by the Commissioner of Insurance, the Court does not construe any ambiguities against the insurers. Given, supra, at 210, and cases cited.
The dispositive policy language is this sentence in §7: “We will pay for each loss up to the actual cash value of the auto or any of its parts at the time of the collision.” (Emphasis in original.) The quoted language establishes the actual cash value of the vehicle, or of any part of it, as the upper limit of the amount the insurer will pay for any loss. “Actual cash value” means “replacement cost minus normal depreciation.” Black’s Law Dictionary, 7th Ed. 1549. Thus, the policy language expressly limits the insurer’s obligation, with respect to any part that is damaged or destroyed in a collision, to an amount reflecting the replacement cost of that part minus its depreciation as of the date of the collision, even if that is less than the amount necessary to repair or replace the part.[10]
Pointing out that the word “betterment” does not appear in the policy, the plaintiffs contend that the insurers’ position contravenes the teaching of Given, supra, 440 Mass. at 212-13, that a court cannot read provisions into a policy. Given does not assist the plaintiffs, but supports the insurers’ position here. The plaintiff in Given sought compensation for loss of “inherent value” of her vehicle resulting from its involvement in a collision. The Court declined to “torture” the plain meaning of the policy language as written to encompass such a benefit, perceiving “nothing exotic” about the words used. Id, at 213. Here, authority for the betterment deduction rests not on any judicially implied provision, but on the expressly stated limitation of payment to the “actual cash value” of any part.[11]
Section 9, to which the plaintiffs refer, also does not assist their position. That provision, by its plain terms, excludes rather than extends coverage. The exclusion for “ordinary wear and tear,” along with freezing, mechanical or electrical failure, or ordinary road damage to tires, is subject to a narrow exception, for situations where such damage “is the result of some other loss which is covered by this policy.”[12] Nothing in this provision abrogates the limitation of collision coverage in §7 to the actual cash value of the vehicle or its parts. Nor does anything in the facts of these *598 cases indicate that the wear and tear to the parts in issue, reflected in the betterment deductions, resulted from the collisions, or from any other covered loss; to the contrary, the facts indicate that the wear and tear had occurred prior to the collisions, reducing the actual cash value of those parts as of that time.
The Court concludes, therefore, that the insurers’ deductions for betterment did not violate the policy, and that defendants are entitled to judgment as a matter of law.

CONCLUSION AND ORDER

For the reasons stated, the plaintiffs Senia Molina, Anthony Cioffi, Janet A. Mason, Jean Metellus, and Edward P. Feener’s Motions for Partial Summary Judgment are DENIED. Defendants Safety Insurance Company, Metropolitan Property and Casualty Insurance Company, Massachusetts Homeland Insurance Company, and The Commerce Insurance Company’s Cross-Motions for Summary Judgment are ALLOWED. The Court orders that judgment enter dismissing count I of each complaint. As to Count II of each complaint, the Court orders that counsel confer and submit a proposed form of declaration in accord with the rulings stated herein.

The plaintiffs have not moved for class certification.

On February 23, 2009, this Court ordered the four cases consolidated for pretrial proceedings.

The 2007 amendment to the standard policy does not affect the issue raised in these cases.

The example of a tire illustrates the concept: An accident destroys a tire that has been on the road for 50,000 miles. Replacement with a new tire makes the car more valuable than it was before the accident. The betterment deduction adjusts for that enhancement in value.

OneBeacon operates in Massachusetts as Massachusetts Homeland Insurance Company (Massachusetts Homeland).

The record does not indicate whether a deductible was subtracted from this amount.

Commerce offers evidence that it offers, in addition to the standard policy, a more expensive policy known as the Elite Package, which expressly provides for replacement cost coverage without reduction for depreciation. The evidence does not indicate whether the Elite Package was offered at the time Feener purchased his policy or at the time he filed his claim.

The Commissioner’s 1994 memorandum reflects this interpretation.

The Court declines to consider the out of state cases on which the plaintiffs rely, which construe different policy language in a different regulatory context. See Givens at 210, n.5.

Defendants offer the example of wear and tear resulting from unauthorized use during theft of the vehicle; the theft would be a covered loss, so that wear and tear resulting from it would be covered, even though ordinary wear and tear is otherwise excluded from coverage.