# United States Court of Appeals
## For the First Circuit

No. 18-2084

STERNGOLD DENTAL, LLC,

Plaintiff, Appellant,

v.

HDI GLOBAL INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Selya, Circuit Judges.

Sean T. O'Leary, with whom O'Leary Murphy, LLC was on brief, for appellant.
Joseph K. Scully, with whom Day Pitney LLP was on brief, for appellee.

July 2, 2019

**SELYA**, **Circuit Judge**. This appeal gives us an opportunity to sink our teeth into a sophisticated insurance coverage question: we must construe the scope of the so-called intellectual property exclusion (IP exclusion) to the personal and advertising injury coverage under a standard commercial general liability policy (the Policy) issued by defendant-appellee HDI Global Insurance Company (HDI) to plaintiff-appellant Sterngold Dental, LLC (Sterngold). Concluding, as we do, that Sterngold's arguments lack bite, we affirm the district court's dismissal of Sterngold's action for failure to state a claim upon which relief can be granted.

## I. BACKGROUND

The relevant facts are undisputed. Sterngold manufactures and sells dental products. To safeguard its business operations, Sterngold purchased the Policy (which covered Sterngold's commercial activities during the calendar year 2016).

In pertinent part, the Policy obligated HDI to defend and indemnify Sterngold against claims arising out of "personal and advertising injury." Withal, coverage for such injuries was subject to certain exclusions. A specific exclusion — the IP exclusion — pretermitted coverage for personal and advertising injury "arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights."

- 2 -

The case at hand turns on the applicability vel non of this exclusion.

The circumstances that sparked this litigation can be succinctly summarized. In May of 2016, Intra-Lock International, Inc. (Intra-Lock), a competitor in the market for dental products, sued Sterngold in the United States District Court for the Southern District of Florida. Count 3 of its complaint alleged, inter alia, that Sterngold infringed Intra-Lock's registered OSSEAN trademark — a trademark denoting a component of its osseointegrative dental implant coating product — by using nearly identical marks, OSSEO and OSSEOs, for a nearly identical product.[1] Sterngold asked HDI to defend the suit and provide indemnification pursuant to the Policy. HDI refused Sterngold's request, denying coverage under the Policy. When Sterngold reiterated its demand for defense and indemnification, HDI again demurred.

Sterngold proceeded to settle the Intra-Lock suit. At that point, it made a third attempt to engage HDI. This time around, Sterngold asserted that the Policy required that HDI reimburse Sterngold for the settlement amount. Once again, HDI turned a deaf ear to Sterngold's entreaties.

---

[1] Intra-Lock's complaint contained several other counts, but the controversy here is limited to count 3. Accordingly, we make no further mention of the other counts set forth in Intra-Lock's complaint.

Invoking diversity jurisdiction, see 28 U.S.C. § 1332(a), Sterngold repaired to the United States District Court for the District of Massachusetts. Pertinently, its complaint against HDI alleged that the latter had breached its duty to defend and indemnify Sterngold against Intra-Lock's claim. HDI responded by moving to dismiss the complaint. See Fed. R. Civ. P. 12(b)(6). Sterngold objected, but the district court granted HDI's motion, holding that, under the Policy, HDI had no duty either to defend or indemnify Sterngold in the Intra-Lock suit. See Sterngold Dental, LLC v. HDI Global Ins. Co., No. 17-11735, 2018 WL 4696744, at *4 (D. Mass. Sept. 29, 2018). This timely appeal followed.

## II. ANALYSIS

We review a district court's dismissal for failure to state a claim de novo. See Artuso v. Vertex Pharm., Inc., 637 F.3d 1, 5 (1st Cir. 2011). "In conducting that review, we accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor." Id. "When . . . a complaint's factual allegations are expressly linked to — and admittedly dependent upon — a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998). Here, the Policy is such a document.

Since this case arises in diversity jurisdiction,[2] state law supplies the substantive rules of decision. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). This includes "rules relating to interpretation of [an] insurance policy." Eaton v. Penn-Am. Ins. Co., 626 F.3d 113, 114 (1st Cir. 2010). It is undisputed that, in the circumstances of this case, Massachusetts law controls.

In Massachusetts, an insurer's duty to defend arises when the facts — in the complaint and known to the insurer — generally demonstrate a possibility that the liability claim falls within the scope of the insurance policy. See B&T Masonry Constr. Co. v. Pub. Serv. Mut. Ins. Co., 382 F.3d 36, 39 (1st Cir. 2004). It follows that an inquiring court, tasked with assessing whether an insurer is duty-bound to its insured, should compare the allegations of the triggering complaint against the insured to the provisions of the insurance policy. See Deutsche Bank Nat'l Ass'n v. First Am. Title Ins. Co., 991 N.E.2d 638, 641 (Mass. 2013); Billings v. Commerce Ins. Co., 936 N.E.2d 408, 414 (Mass. 2010).

_____

[2] HDI originally challenged the propriety of diversity jurisdiction, asserting that Sterngold had not identified the citizenship of its members. See, e.g., ConnectU, LLC v. Zuckerberg, 522 F.3d 82, 87 (1st Cir. 2008) (recognizing that, for purposes of diversity jurisdiction, "citizenship of a limited liability company is to be determined by the citizenship of its members" (citing Pramco, LLC ex rel. CFSC Consort., LLC v. San Juan Bay Marina, Inc., 435 F.3d 51, 54-55 (1st Cir. 2006))). Sterngold augmented the record in a later filing, though, and no jurisdictional question remains.

The bar is not high, and the insured must be given the benefit of any reasonable doubt. See Sanders v. Phoenix Ins. Co., 843 F.3d 37, 43 (1st Cir. 2016) (explaining that, under Massachusetts law, "[i]f th[e] analysis yields two reasonable (but conflicting) interpretations . . . the insured must be given the benefit of the [more favorable] interpretation").

An insurer's duty to indemnify the insured is narrower than its duty to defend. See id. at 46. The scope of the duty to indemnify hinges on whether the judgment — or in this case, the settlement — is for a covered claim. See Massamont Ins. Agency, Inc. v. Utica Mut. Ins. Co., 489 F.3d 71, 73 (1st Cir. 2007). It follows, then, that if there is "no duty to defend . . . the insurer does not have a duty to indemnify." Sanders, 843 F.3d at 46 (quoting Bagley v. Monticello Ins. Co., 720 N.E.2d 813, 817 (Mass. 1999)).

As a general matter, it is the insured's burden to show that the insuring agreements — that is, the overall coverage provisions of a policy — apply in a given situation. See Vt. Mut. Ins. Co. v. Zamsky, 732 F.3d 37, 41 (1st Cir. 2013) (construing Massachusetts law). Once such a showing is made, the burden then shifts to the insurer, which has the opportunity to show that some exclusion places the claim outside the scope of coverage. See id. Should questions surface as to the meaning of the terms in the policy, we apply conventional rules of contract interpretation to

elucidate the meaning of the questioned terms.  See Sanders, 843 F.3d at 42.

Against this backdrop, the case at hand presents a straightforward question about the meaning and effect of the IP exclusion.  Sterngold's claim is that Intra-Lock's complaint asserted an advertising injury within the scope of the coverage afforded by the Policy.  As such, Sterngold insists that HDI was obligated to defend it in the Intra-Lock suit and furnish indemnification for any resulting damages (including the eventual settlement).  HDI rejoins that, even if the injury alleged falls within the general language of the insuring agreements, the injury was squarely within the crosshairs of the IP exclusion and, thus, was excluded from coverage.

We set the stage.  In pertinent part, the Policy affords coverage for "sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury.'"  The Policy defines "personal and advertising injury" to include the use of "another's advertising idea" or "[i]nfringing upon another's copyright, trade dress or slogan in [an] 'advertisement.'"  The Policy further provides that publication on the internet may constitute an advertisement.  Sterngold argues that the Intra-Lock complaint alleged a covered advertising injury — principally, the use of Intra-Lock's advertising idea through

the inclusion of the OSSEO and OSSEOs trademarks in Sterngold's online advertising.

The phrase "advertising idea," as used in the Policy, is somewhat nebulous — but it is not without limits. The Supreme Judicial Court of Massachusetts recently offered some helpful clarification: "[i]f the insured took an idea for soliciting business or an idea about advertising, then the claim" constitutes an advertising injury for the use of another's advertising idea. Holyoke Mut. Ins. Co. v. Vibram USA, Inc., 106 N.E.3d 573, 579 (Mass. 2018) (alteration in original) (quoting Auto Sox USA Inc. v. Zurich N. Am., 88 P.3d 1008, 1011 (Wash. Ct. App. 2004)). But if the underlying complaint merely alleges "that the insured wrongfully took a . . . product and tried to sell that product," such an action would not constitute an injury stemming from another's advertising idea. Id. (alteration in original) (quoting Auto Sox USA, 88 P.3d at 1011).

In its suit against Sterngold, Intra-Lock alleged that it "acquired value, name and brand recognition, and goodwill in the OSSEAN mark as a result of continual and substantial advertising." Thus, Sterngold's use of "confusingly similar marks OSSEO and OSSEOs with osseointegrative dental implant coatings in internet advertising . . . [was] likely to cause confusion, mistake, and deceive third parties" with respect to an imagined affiliation between Intra-Lock and Sterngold. Given these

- 8 -

allegations, Sterngold contends that the sums it paid in settlement were for its appropriation of Intra-Lock's advertising idea and, therefore, fell within the coverage of the Policy.

It is not clear to us that Intra-Lock's allegations concerning the OSSEO and OSSEOs marks can be said to embody an "advertising idea." On the one hand, Intra-Lock's OSSEAN mark could be considered an "idea for soliciting business." Vibram, 106 N.E.3d at 579 (quoting Auto Sox USA, 88 P.3d at 1011). On the other hand, the mark could be thought to convey no idea but, rather, to serve as a reference to the product itself.

Here, however, we need not decide the question of whether Intra-Lock's OSSEAN mark, as described in its complaint, constituted an "advertising idea." Rather than drill down into this muddy terrain, we simply assume, favorably to Sterngold, that Intra-Lock's complaint advanced a claim for an advertising injury.

Even with this favorable assumption in place, Sterngold does not find safe passage. The most formidable obstacle that blocks its way is the IP exclusion, which provides that:

> This insurance does not apply to: . . . "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

> However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

The question for us to resolve, therefore, reduces to whether the advertising injury alleged in Intra-Lock's complaint arose out of the claimed infringement of Intra-Lock's trademark.

Under Massachusetts law, "arising out of" indicates a wide range of causation. See Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 7 (1st Cir. 2000); Rischitelli v. Safety Ins. Co., 671 N.E.2d 1243, 1245 (Mass. 1996). The phrase "is generally understood to mean 'originating from,' 'growing out of,' 'flowing from,' 'incident to,' or 'having connection with.'" Brazas Sporting Arms, 220 F.3d at 7 (collecting cases). Seen through this prism, the IP exclusion is squarely on point. As we explain below, the claim that Sterngold says is based on an advertising idea is alleged to have arisen out of the infringement of Intra-Lock's trademark.

To begin, Intra-Lock's complaint labeled its claim as one for the "Infringement of [its] OSSEAN Trademark." The complaint then asserted that, by means of its described conduct, Sterngold "willfully infringed upon and diluted [Intra-Lock's] trademark OSSEAN." Although part of the concern expressed by Intra-Lock involved the content of Sterngold's online advertising, the online advertising was of concern because of how that activity impacted the uniqueness and strength of Intra-Lock's OSSEAN mark.

- 10 -

Given the gravamen of Intra-Lock's claim, the IP exclusion fits like a glove. Consequently, the conclusion is irresistible that HDI owed no duty either to defend or indemnify Sterngold with respect to Intra-Lock's claim.

To be sure, the concept of an advertising injury sometimes may overlap with the concept of trademark infringement. Cf. State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co. of Am., 343 F.3d 249, 258 (4th Cir. 2003) (noting that "a trademark plays an important role in advertising a company's products"). But the very fact that the Policy contains an IP exclusion encompassing trademark infringement claims signals an awareness of this relationship. And where, as here, the alleged advertising injury arises from a trademark infringement claim, that injury is manifestly excluded from coverage.

Sterngold fights tooth and nail to undermine this conclusion. Even so, Sterngold does not point to any ambiguity in the policy language pertaining to trademark infringement claims. Cf. Certain Interested Underwriters at Lloyd's, London v. Stolberg, 680 F.3d 61, 66 (1st Cir. 2012) ("An ambiguity must be real. A policy provision will not be deemed ambiguous simply because the parties quibble over its meaning."). Instead, its argument rests on the premise that the facts alleged by Intra-Lock amount to a covered claim. To this end, it places great weight on the second sentence of the IP exclusion, which instructs that "such

other intellectual property rights do not include the use of another's advertising idea in your 'advertisement.'" Given that the advertising injury stems from Sterngold's use of Intra-Lock's advertising idea, Sterngold's thesis runs, the claim asserted nestles within the scope of coverage under the Policy.

But reality has sharp teeth, and a straightforward reading of the language punctures Sterngold's proposed construction. The first sentence of the IP exclusion lists a series of IP-related claims, including trademark infringement. Each specifically articulated claim is separated from the next by a comma. The list concludes with the catchall phrase "or other intellectual property rights." This syntax, combined with the use of the disjunctive "or," clearly differentiates the listed IP-related claims from the catchall phrase "other intellectual property rights." Here, moreover, the catchall phrase is repeated in the second sentence of the exclusion. It is only in connection with this phrase — not in connection with the listed IP-related claims — that the "use of another's advertising idea" is excepted from the reach of the exclusion. Just as "[e]very word in an insurance contract must be presumed to have been employed with a purpose," Bos. Gas Co. v. Century Indem. Co., 910 N.E.2d 290, 304-05 (Mass. 2009) (quoting Allmerica Fin. Corp. v. Certain Underwriters at Lloyds, London, 871 N.E.2d 418, 425 (Mass. 2007)),

so too every item of punctuation in the contract likewise must be presumed to have been employed with a purpose.

The short of it is that even if a trademark infringement claim involves an injury stemming from the use of an advertising idea, the catchall phrase "other intellectual property rights" will not encompass the claim. Any other reading would render nugatory the plain language contained in the first sentence of the IP exclusion. That path is not open to us. See Alicea v. Machete Music, 744 F.3d 773, 785 (1st Cir. 2014) (explaining that a contract must be read in its entirety and must be construed "to give reasonable effect to each of its provisions" (quoting J.A. Sullivan Corp. v. Commonwealth, 494 N.E.2d 374, 378 (Mass. 1986))); Lexington Ins. Co. v. Gen. Accid. Ins. Co. of Am., 338 F.3d 42, 48 (1st Cir. 2003) ("In construing insurance contracts, courts have no warrant either to convolute the straightforward meaning of policy language or to endow the words with a gloss that is belied by the language itself."); see also Allstate Ins. Co. v. Airport Mini Mall, LLC, 265 F. Supp. 3d 1356, 1372 (N.D. Ga. 2017) (construing IP exclusion and holding that "to give effect to each provision . . . coverage for 'advertising injury' does not apply" to trademark infringement claims); High 5 Sportwear, Inc. v. H5G, LLC, 237 F. Supp. 3d 674, 685 (S.D. Ohio 2017) (similar).[3]

---

[3] Contrary to Sterngold's importunings, our reading of the IP exclusion is not in tension with Vibram. See 106 N.E.3d at 580-

- 13 -

Sterngold has a fallback position. It argues that its deployment of the OSSEO and OSSEOs marks in internet advertising was covered under the Policy because the marks were actually slogans and, thus, came within the built-in exception to the IP exclusion (captured in the last sentence of that exclusion). Building on this porous foundation, Sterngold suggests that even if the advertising injury arose from a trademark infringement claim, the carve-out for slogan infringement validated its quest for coverage. We think not.

Of course, the exclusion to the exclusion has the potential to salvage some claims. Cf. High Point Design, LLC v. LM Ins. Co., 911 F.3d 89, 94 (2d Cir. 2018) (observing that the "secondary exclusion from the primary exclusion . . . make[s] clear that the primary exclusion does not exclude coverage for trade dress infringement in an advertisement"). But a "slogan is certainly not by definition a trademark." MicroStrategy, Inc. v. Motorola, Inc., 245 F.3d 335, 342 (4th Cir. 2001). And here, the slogan infringement carve-out does not apply because Intra-Lock never pressed anything resembling a slogan infringement claim. Indeed, its complaint did not so much as mention the word "slogan."

---

81. There, the court examined whether an advertising idea could flow from a concept not protected by a trademark. See id. at 581. That is not the issue here.

- 14 -

Nor would any language in the complaint support the characterization of OSSEAN as something other than a trademark.

We add, moreover, that in reading the secondary exclusion — as in reading insurance policies generally — undefined words should be given their ordinary meaning. See Easthampton Congregational Church v. Church Mut. Ins. Co., 916 F.3d 86, 92 (1st Cir. 2019); Fed. Ins. Co. v. Raytheon Co., 426 F.3d 491, 498-99 (1st Cir. 2005); see also Mass. Insurers Insolv. Fund v. Premier Ins. Co. of Mass., 787 N.E.2d 550, 553 (Mass. 2003) (observing that "unambiguous language of an insurance exclusionary clause must be given its usual and ordinary meaning"). A slogan is typically defined as "a phrase expressing the aims or nature of an enterprise . . . [and/or] a catch phrase used in advertising or promotion." CMM Cable Rep, Inc. v. Ocean Coast Props., Inc., 97 F.3d 1504, 1520 (1st Cir. 1996) (alteration in original) (quoting Webster's II New Riverside Univ. Dictionary (1988)); see Cincinnati Ins. Co. v. Zen Design Grp., Ltd., 329 F.3d 546, 556 (6th Cir. 2003) (defining slogan as "distinctive cry, phrase, or motto" (quoting Random House Unabridged Dictionary 1800 (2d ed. 1993))). Sterngold has pointed to nothing that would bring the OSSEAN mark within the four corners of these definitions.

To cinch the matter, nothing in the record suggests that Intra-Lock ever used OSSEAN as a slogan. Instead, Intra-Lock claimed that the mark was "distinctive and famous within the

meaning of [the trademark statute]." At bottom, Intra-Lock's claim was that OSSEAN is a "source-identifier," <u>Bos. Duck Tours, LP</u> v. <u>Super Duck Tours, LLC</u>, 531 F.3d 1, 12 (1st Cir. 2008), of its proprietary product, not a slogan.[4] Because Intra-Lock's complaint did not allege, nor even "roughly sketch[] a claim," <u>Billings</u>, 936 N.E.2d at 414, for slogan infringement, the secondary exclusion upon which Sterngold relies is inapposite.

"It is said that all good things come to an end," <u>State Police Ass'n of Mass.</u> v. <u>Comm'r of Internal Revenue</u>, 125 F.3d 1, 3 (1st Cir. 1997), and at the finish line, we reach the same result as the court below. To the extent that Intra-Lock's complaint can be said to have alleged an advertising injury, that injury unquestionably arose out of Intra-Lock's trademark infringement claim. The Policy makes it luminously clear that such an injury is excluded from the scope of coverage. Nor can Sterngold seek refuge in the slogan infringement carve-out because Intra-Lock plainly did not assert a slogan infringement claim. Accordingly, HDI had no duty to defend or indemnify Sterngold with respect to Intra-Lock's claim.

---

[4] We do not gainsay that, in some circumstances, a trademark may do double duty as a slogan. <u>See</u>, <u>e.g.</u>, <u>L.L. Bean, Inc.</u> v. <u>Drake Publishers, Inc.</u>, 811 F.2d 26, 28 (1st Cir. 1987). In other circumstances, though, a trademark is simply a trademark and cannot by any stretch of even the most fertile imagination be viewed as a slogan. <u>See</u>, <u>e.g.</u>, <u>MicroStrategy</u>, 245 F.3d at 342. This case is of the latter stripe.

**III. CONCLUSION**

We need go no further.  For the reasons elucidated above, the judgment of the district court is

**Affirmed.**