DIANE GOLCHIN vs. LIBERTY MUTUAL INSURANCE COMPANY.

Worcester. April 2, 2013. - August 8, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Practice, Civil,* Judgment on the pleadings. *Contract,* Insurance. *Insurance,* Motor vehicle insurance, Construction of policy, Medical supplementary coverage, Coverage.

Under a medical payments coverage provision (MedPay) of the standard Massachusetts automobile insurance policy (policy), an insured who was injured in an accident was entitled to recover medical expenses that had been covered and paid under the insured's separate policy of health insurance, where the plain language of the policy provided MedPay coverage in such circumstances, and where health insurance coverage was not among the express exclusions in the policy. [159-167]

CIVIL ACTION commenced in the Superior Court Department on September 30, 2008.

The case was heard by *John D. McCann,* J., on a motion for judgment on the pleadings.

The Supreme Judicial Court granted an application for direct appellate review.

*Kenneth D. Quat (Elliot Beresen* with him) for the plaintiff.

*Myles W. McDonough (Christopher M. Reilly* with him) for the defendant.

*E. Michael Sloman,* for Automobile Insurers Bureau, amicus curiae, submitted a brief.

*Timothy C. Kelleher, Michael C. Najjar, & J. Michael Conley,* for Massachusetts Academy of Trial Attorneys, amicus curiae, submitted a brief.

BOTSFORD, J. This is the second time this court has considered the present case. Again, the issue presented is whether a claimant may seek medical expense benefits under the "medical payments" coverage (MedPay) offered in a standard Massachusetts automobile insurance policy (auto policy) where those expenses

were covered and paid under the claimant's separate policy of health insurance. In *Golchin* v. *Liberty Mut. Ins. Co.*, 460 Mass. 222, 236-237 (2011) (*Golchin I*), we reversed the order dismissing the complaint filed in the Superior Court by the claimant, Diane Golchin, against Liberty Mutual Insurance Company (Liberty Mutual), concluding that Golchin had alleged facts sufficient to raise an actionable right to relief. Today, we conclude that Golchin is entitled to the MedPay benefits provided by her auto policy, notwithstanding that the medical expenses at issue were covered by and paid under a separate policy of health insurance. We therefore reverse the judgment of the Superior Court allowing Liberty Mutual's motion for judgment on the pleadings.[1]

1. *Background.* We briefly summarize the facts that are pertinent to this appeal, as alleged in the complaint and contained in extrinsic documents introduced by the parties before the motion judge.[2]

Golchin sustained significant personal injuries, resulting in medical expenses in excess of $100,000, when she was involved in a motor vehicle accident as an occupant of her husband's car. The car was insured under an auto policy issued by Liberty Mutual that included optional MedPay benefits of up to $25,000. At the time of the accident, Golchin also was insured under a health insurance policy issued by Blue Cross Blue Shield of Massachusetts (Blue Cross).

As a result of the accident, Liberty Mutual paid $8,000 in personal injury protection (PIP) benefits to Golchin. Blue Cross paid Golchin's additional medical expenses, the charges for which came to $100,893, and later asserted a lien in the civil action filed by Golchin against the alleged tortfeasor. The lien was in the amount of $32,033.03 — the sum Blue Cross actually

---

[1]We acknowledge the amicus briefs submitted by the Automobile Insurers Bureau and the Massachusetts Academy of Trial Attorneys.

[2]For the reasons we discuss in part 2, *infra*, we treat the motion for judgment on the pleadings filed by Liberty Mutual Insurance Company (Liberty Mutual) as a motion for summary judgment, and, as did the Superior Court judge (motion judge) and the parties, we have considered the materials filed by both parties in connection with the motion for judgment on the pleadings. The facts of this case are also described in *Golchin* v. *Liberty Mut. Ins. Co.*, 460 Mass. 222, 225 (2011) (*Golchin I*).

paid to Golchin's medical providers to cover Golchin's medical expenses. Golchin submitted to Liberty Mutual documentation of the medical expenses that exceeded PIP benefits, seeking coverage under the MedPay provisions of the auto policy. Liberty Mutual, however, declined to pay Golchin any MedPay benefits because Blue Cross already had paid the submitted expenses. Thereafter, Golchin paid Blue Cross $32,033.03 out of her tort action recovery in full satisfaction of its lien.

On September 30, 2008, Golchin commenced the present action against Liberty Mutual on behalf of herself and a putative class of similarly situated individuals, alleging that the company's failure to disburse MedPay benefits to her constituted a breach of contract, a breach of the implied covenant of good faith and fair dealing, and a violation of G. L. c. 93A, § 2. In *Golchin I*, 460 Mass. at 236-237, on further appellate review, we concluded that Golchin's complaint was sufficient to raise a right to relief, that Liberty Mutual had not demonstrated as a matter of law that Golchin may not receive MedPay benefits when she already had received medical expense benefits under her health insurance policy, and that it was error for a Superior Court judge to have allowed Liberty Mutual's motion to dismiss Golchin's complaint. On remand, Liberty Mutual filed its answer and a motion for judgment on the pleadings. A different Superior Court judge (motion judge) allowed the defendant's motion, agreeing with Liberty Mutual that as a matter of law, Golchin never "incurred" any expenses for medical services within the meaning of the auto policy's MedPay provisions because 211 Code Mass. Regs. § 52.12(8) (2008) prohibits medical services providers from billing patients for the charges of services covered by insurance, except for deductibles, copayments, or coinsurance.[3] Golchin again filed an appeal in the Appeals Court, and we granted the plaintiff's application for direct appellate review.

2. *Review of Liberty Mutual's motion.* The motion at issue before us was filed as a motion for judgment on the pleadings pursuant to Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974), and

---

[3]The cited regulation provides: "Contracts between carriers and health care providers shall state that providers shall not bill patients for charges for covered services other than for deductibles, copayments, or coinsurance." 211 Code Mass. Regs. § 52.12(8) (2008).

the motion judge only considered it as such. However, it appears that in substance the motion was one for summary judgment under Mass. R. Civ. P. 56, as amended, 436 Mass. 1404 (2002). In the motion and opposition, the parties both made reference to facts and documents not contained in the pleadings and both attached multiple documents extrinsic to the pleadings. The motion judge's memorandum of decision also refers to facts outside of the pleadings, although the judge did not rule explicitly whether the parties were entitled to submit and rely on extrinsic materials. See Mass. R. Civ. P. 12 (c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56").

In the circumstances, where the parties and the motion judge have relied on these extrinsic materials, where neither party appears to claim any factual disagreement with them or prejudice from their being considered, and where it also appears that there are no material facts in dispute in any event, we review the motion as one for summary judgment. See Mass. R. Civ. P. 56 (c). Cf. *Cousineau* v. *Laramee*, 388 Mass. 859, 860 n.2 (1983), and cases cited (where plaintiffs have not challenged trial judge's implicit conversion of motion filed pursuant to Mass. R. Civ. P. 12 [b] [6], 365 Mass. 754 [1974], to motion for summary judgment and where no prejudice to plaintiffs' rights to present extraneous matters, court "review[s] the judge's dismissal of this action as though he had granted a motion for summary judgment" and "[s]uch motion is properly granted when 'there are no genuine issues as to any material fact and . . . the [moving party] is entitled to judgment as a matter of law' ").

3. *Discussion.* Interpretation of an insurance policy is a question of law to be determined by the court. *Massachusetts Bay Transp. Auth.* v. *Allianz Ins. Co.*, 413 Mass. 473, 476 (1992), citing *Nelson* v. *Cambridge Mut. Fire Ins. Co.*, 30 Mass. App. Ct. 671, 673 (1991). "We interpret the words of the standard policy in light of their plain meaning, . . . giving full effect to the document as a whole[,] . . . consider[ing] 'what an

objectively reasonable insured, reading the relevant policy language, would expect to be covered' . . . [and] interpret[ing] the provision of the standard policy in a manner consistent with the statutory and regulatory scheme that governs such policies." *Golchin I*, 460 Mass. at 225, citing *Given* v. *Commerce Ins. Co.*, 440 Mass. 207, 209 (2003). "[B]ecause the approved wording of the standard policy is controlled by the Commissioner of Insurance and not by any insurer (see G. L. c. 175, § 113A), we do not construe ambiguities against the insurer." *Golchin I, supra*, citing *Given* v. *Commerce Ins. Co., supra* at 210.

The standard policy contains two forms of coverage implicated by Golchin's claim: compulsory PIP benefits of up to $8,000,[4] and MedPay benefits up to a purchased amount. MedPay is one of eight optional coverages that the auto policy offers insureds.[5] The question before us relates only to the availability of MedPay benefits when the medical expenses for which the MedPay benefits are sought also have been paid by a health insurance provider under a separate policy of health insurance.[6] We conclude that under the plain language of the auto policy, MedPay benefits are payable in such circumstances.

Part 6 of the auto policy describes the MedPay coverage. It provides, in relevant part:

> "[W]e will pay reasonable *expenses* for necessary medical and funeral services *incurred* as a result of an accident.
>
> "We will pay for *expenses* resulting from bodily injuries

---

[4]See *Creswell* v. *Medical W. Community Health Plan, Inc.*, 419 Mass. 327, 328-330 (1995) (reciting legislative history of personal injury protection [PIP] benefits).

[5]Automobile insurers are authorized to offer medical benefits coverage (MedPay) under G. L. c. 175, § 111C, and required by G. L. c. 175, § 113C, to offer insured individuals the option of buying MedPay benefits of at least $5,000. See *Metropolitan Prop. & Cas. Ins. Co.* v. *Blue Cross & Blue Shield of Mass., Inc.*, 451 Mass. 389, 392-393 (2008) (describing history of MedPay provisions).

[6]Under the provisions of the standard Massachusetts automobile insurance policy (auto policy), MedPay benefits are not payable so long as PIP coverage is available and has not been exhausted. See *Golchin I*, 460 Mass. at 226, and cases cited. There is no dispute that PIP benefits have been exhausted in this case. *Id.* at 229.

to anyone occupying [the insured's] auto at the time of the accident." (Emphasis added.)

The terms "incur" and "expenses" are not defined in the auto policy. However, the plain meaning of the word "incur" is "[to] sustain," and the word "expense" is defined as "[a]n expenditure of money" or "a cost." American Heritage Dictionary of the English Language 625, 889 (4th ed. 2000). The auto policy thus requires only that there be expenses for medical services sustained as a result of bodily injuries suffered in an accident by the owner of the insured vehicle or an occupant of that vehicle; it does not say *who* must actually pay these expenses in order to trigger the MedPay coverage under Part 6.[7] We read this policy language to mean that MedPay is intended to cover, up to the limits of coverage purchased, medical expenses resulting from injuries caused by an accident, regardless of who — whether the claimant or a health insurance provider — actually pays those expenses.[8] We conclude that this interpretation also represents "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Golchin I*, 460 Mass. at 225, quoting *Given* v. *Commerce Ins. Co.*, 440 Mass. at 209.

The MedPay provisions of the auto policy considered as a whole as well as in comparison to the other provisions of the

[7]Cf. G. L. c. 231, § 6D (authorizing damages for pain and suffering in tort actions for "reasonable and necessary expenses incurred in treating such injury").

[8]Our reading of the auto policy's MedPay provisions finds support in decisions by a number of courts in other jurisdictions construing similar automobile insurance policy language. See, e.g., *Feit* v. *St. Paul Fire & Marine Ins. Co.*, 209 Cal. App. 2d Supp. 825, 828 (1962) (payment of medical expenses by health insurance provider did not preclude recovery of MedPay as policy language indicated "insurer intended to pay for medical expenses incurred, irrespective of by whom, and whether or not the insured was legally obligated to pay them"); *Kopp* v. *Home Mut. Ins. Co.*, 6 Wis. 2d 53, 56-57 (1959) (payment of hospital expenses by health insurance provider did not preclude recovery of MedPay where "policy provisions do not state *who* is required to incur the expense in order for the insured to recover for medical or hospital services supplied to or for him" [emphasis in original]). But see *Carboni* v. *Standard Sec. Life Ins. Co. of N.Y.*, 45 Misc. 2d 893, 894 (N.Y. App. Term 1965) (per curiam) ("no expense was 'actually incurred' by plaintiff or his family within the meaning of the policy issued by the defendant" where plaintiff's wife received prepaid medical care under separate health insurance plan).

policy strengthens our conclusion that the policy contemplates the availability of MedPay benefits for medical expenses notwithstanding simultaneous coverage under the claimant's health insurance policy. In particular, Part 6 of the auto policy contains express exclusions as well as limitations on the availability or amount of MedPay benefits that will be payable in certain circumstances:

> "We *will not pay under this Part* for any expenses that are payable, or would have been payable except for a deductible, under the PIP coverage of this policy or any other Massachusetts auto policy. . . .
>
> "If someone covered under this Part is also entitled to Medical Payments coverage under another auto policy issued to you or any household member, *we will pay only our proportionate share*. If someone covered under this Part is using an auto he or she does not own at the time of the accident, *the owner's Medical Payments insurance must pay its limit before we pay*. . . .
>
> "*We will not pay benefits under this Part* which duplicate payments made under the Medical Payments coverage of any other auto policy." (Emphases added.)[9]

What is *not* present here is an exclusion from or limitation on MedPay coverage for medical expenses that are also covered under a separate health insurance policy. We interpret the absence of such a provision to mean, by implication, that the policy does not bar MedPay benefits in such a situation. See *Allstate Ins. Co.* v. *Bearce*, 412 Mass. 442, 447 (1992).[10]

Part 2 of the auto policy, describing PIP benefits, is also instructive. It expressly limits PIP coverage based on the avail-

---

[9]See *Allstate Ins. Co.* v. *Bearce*, 412 Mass. 442, 444-446 (1992) (describing MedPay exclusions in standard auto policy).

[10]See also *Hamlen* v. *Rednalloh Co.*, 291 Mass. 119, 123 (1935) ("The principle of construction invoked, namely, that the expression by the parties in a written instrument of certain things indicates their intention to exclude other unmentioned things, applies where it may reasonably be inferred that if the parties intended to include subjects to which no reference is made in the instrument they would have done so by the addition of appropriate words").

ability of health insurance,[11] indicating an obvious awareness of the possibility that collateral medical expense payments by a health insurer may overlap with benefits offered under the auto policy. The specific treatment of this possibility in the PIP provisions of the auto policy, and the lack of any mention of it in the MedPay provisions, reflect what we take as an intentional selection of when medical expense benefits under the policy will be limited by the existence of health insurance and when they will not.

In this case, the record indicates that the personal injuries Golchin sustained in her automobile accident resulted in medical expenses of $32,033.03. Such expenses were clearly "incurred" within the plain language of the auto policy — first, by Blue Cross, and later by Golchin when the lien placed by Blue Cross on her tort recovery pursuant to G. L. c. 111, § 70A,[12] was satisfied.[13] Golchin therefore is entitled to recover MedPay benefits under the auto policy in the full purchased amount of $25,000.

Notwithstanding the plain language of the auto policy, Liberty Mutual argues that various statutes and regulations preclude payment of MedPay benefits in the circumstances of this case. Its principal contention is the one it advanced successfully before the motion judge, namely, that MedPay benefits are not

---

[11]Part 2 of the auto policy provides in part:

> "Some people have a policy of health, sickness, or disability insurance or a contract or agreement with a group, organization partnership or corporation to provide, pay for, or reimburse the cost of medical expenses ('health plan'). If so, *we will pay up to $2,000 of medical expenses for any injured person. We will also pay medical expenses in excess of $2,000 for such injured person which will not be paid by a health plan*" (emphasis added).

[12]General Laws c. 111, § 70A, provides, in relevant part: "[A]ny health maintenance organization which has furnished health services . . . to a person injured in . . . an accident shall . . . have a lien for such benefits, upon the net amount payable to such injured person . . . from another person as damages on account of such injuries."

[13]As discussed *infra*, while Golchin herself ultimately incurred the medical expenses, we read the auto policy to permit a claimant to receive otherwise available MedPay benefits for medical expenses that have been covered by a health insurer even if the claimant has not paid back the health insurer through satisfaction of a lien or in some other manner.

payable in this case because Golchin did not and never could have "incurred" the medical expenses for which she seeks MedPay coverage because 211 Code Mass. Regs. § 52.12(8), a regulation issued by the Commissioner of Insurance (commissioner) pursuant to G. L. c. 176O,[14] prohibits medical services providers that contract with health insurance carriers from billing patients for the charges for covered services other than deductibles, copayments, or coinsurance. Thus, according to Liberty Mutual, when health insurance is at issue, the only types of medical expenses covered by MedPay are deductibles, copayments, and coinsurance — that is, charges not covered under the health insurance plan.

Liberty Mutual's interpretation flies in the face of the auto policy's language and grossly inflates the import of 211 Code Mass. Regs. § 52.12(8). A regulation that restricts patient billing by health care providers for services covered by patients' health insurance contracts has no bearing on the availability of MedPay under the auto policy, a completely separate type of insurance contract. As discussed, expenses related to medical services provided are still "incurred" within the meaning of the auto policy's MedPay provisions, regardless of whether the expenses are paid by a health insurer or the claimant; 211 Code Mass. Regs. § 52.12(8) is irrelevant. Moreover, the auto policy nowhere states that its MedPay coverage is limited to deductibles, copayments, or coinsurance, as Liberty Mutual contends; it simply covers "reasonable expenses for necessary medical . . . services." See *Metropolitan Prop. & Cas. Ins. Co.* v. *Blue Cross & Blue Shield of Mass., Inc.*, 451 Mass. 389, 393 n.6 (2008), citing *Creswell* v. *Medical W. Community Health Plan, Inc.*, 419 Mass. 327, 331 (1995) ("There appears to be no legislative history supporting . . . th[e] position[]" that "MedPay is intended to cover expenses not otherwise covered under a health insurance plan or PIP, such as copayments, out-of-network care, and out-of-formulary prescription medications"). Liberty

---

[14]General Laws c. 176O, which concerns health insurance consumer protections, was enacted "to protect the rights of patients and to preserve the public health." 1999 House Doc. No. 4525. The statute does not concern automobile insurance.

Mutual's reliance on 211 Code Mass. Regs. § 52.12(8) thus misses the mark.[15]

Remarkably, Liberty Mutual also argues that Bulletin 2008-12 (bulletin), in which the commissioner addresses the coordination of benefits among PIP, health insurance, and MedPay, makes the unavailability of health insurance benefits a prerequisite to the availability of MedPay benefits. Liberty Mutual advanced the same argument before this court in *Golchin I*. Now, as then, "Liberty Mutual drastically overstates the support offered to its position by the bulletin." *Golchin I*, 460 Mass. at 230. We see no reason to depart from our conclusion there that the bulletin simply "does not advise insurers regarding proper procedures where a claimant receives complete recovery from his or her health insurer and nevertheless seeks MedPay benefits for the same expenses" and that, therefore, the bulletin cannot require dismissal of Golchin's complaint.[16] *Id.* at 231-232.

Finally, Liberty Mutual argues that recovery of MedPay in this case would result in benefits that are impermissibly duplicative of payments made under a policy of health insurance, in violation of common-law principles governing indemnity insurance. Although in Golchin's case no double recovery will result because of her payment in full satisfaction of Blue Cross's lien, we acknowledge it is possible that operation of the plain language of the auto policy, as we have construed it, could result in MedPay benefits duplicating payments made by a health insurer. We therefore address the argument briefly.

This court has "recognize[d] the indemnity character of medical and hospital expense benefits," *Frost* v. *Porter Leasing Corp.*, 386 Mass. 425, 430 (1982), and that common-law indem-

---

[15]Liberty Mutual makes several additional arguments that rely on, or mirror, its erroneous interpretation of 211 Code Mass. Regs. § 52.12(8). We have examined the arguments and find them to be without merit.

[16]Liberty Mutual also contends that the bulletin's "prohibition" of duplicative payment is in harmony with statutory directives to the Commissioner of Insurance to control auto insurance costs. As noted in the text, the bulletin contains no such prohibition with regard to MedPay. Additionally, the argument is inapposite because MedPay is a form of optional coverage under the auto policy and its payment "does nothing to undermine the legislative goal of controlling the cost of *compulsory* insurance" (emphasis in original). *Metropolitan Prop. & Cas. Ins. Co.* v. *Blue Cross & Blue Shield of Mass., Inc.*, 451 Mass. 389, 394 (2008).

nity principles may preclude double recovery. See *Golchin I*, 460 Mass. at 236 n.9, citing *Koppers Co.* v. *Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1452 (3d Cir. 1996). Nevertheless, in *Allstate Ins. Co.* v. *Bearce*, 412 Mass. at 447-448, where the insured sought to recover payments under both the underinsured motorist and the medical benefits provisions of an earlier version of the standard auto policy, we concluded that the unambiguous language of the policy permitted him to do so, even though, as a result, the insured would recover more than his loss, stating that the express policy language "clearly reflects the contemplation of the parties that payments under the medical payments coverage might properly result in the insured recovering a sum in excess of the loss caused by his accident." See 6 J.E. Thomas & C.J. Robinette, New Appleman on Insurance Law § 64.04[2], at 64-57 (2012) ("Where the policy does not contain a nonduplication provision or set-off provision, courts and commentators conclude that a double recovery is permissible").[17] Similar to *Allstate Ins. Co.*, here, the unambiguous language of the auto policy provides MedPay coverage even where a health insurance provider has paid medical expenses resulting from injuries sustained by a claimant in an accident, and there is no nonduplication provision relating to health insurance. Golchin thus is entitled to recover the MedPay benefits available under the auto policy.

That being said, Liberty Mutual's concern about duplicative payments may be warranted. Indeed, we have observed that "it seems quite probable that MedPay was originally intended to cover medical expenses in the event of an accident for people who did not have health insurance — a benefit that may be approaching irrelevance in light of the recently enacted 'universal' health care mandate," although we have found no legislative purpose underlying MedPay benefits to support this proposition. *Metropolitan Prop. & Cas. Ins. Co.* v. *Blue Cross & Blue Shield of Mass., Inc.*, 451 Mass. at 393 n.6, citing G. L. c. 111M, § 2, inserted by St. 2006, c. 58, § 12. Liberty Mutual, however, is

---

[17]Cf. 15 G. Couch, Insurance § 220:47, at 220-56 (3d ed. 2005) ("Where two hospitalization or medical payments policies cover the same person and neither policy has a coordination of benefits clause, each insurer must pay all expenses and the insured is entitled to all payments").

not without a remedy. "[I]t is always open to automobile insurers to petition the Division of Insurance . . . to change the language of the policy so as to clarify that it does not require the result of which they complain." *Metropolitan Prop. & Cas. Ins. Co.* v. *Blue Cross & Blue Shield of Mass., Inc., supra* at 395.

4. *Conclusion.* The judgment of the Superior Court is reversed, and the case is remanded to that court for further proceedings consistent with this opinion.

*So ordered.*