Pierce, J.
This is an appeal from the allowance of a motion for summary judgment brought by defendant Liberty Mutual Insurance Company (“Liberty”). The plaintiff, Jennifer Vail (“Vail”), contends that the trial judge erred in concluding that the standard Massachusetts automobile insurance policy seventh edition (“standard policy”), did not provide coverage for a loss resulting from the negligence of the purchaser of an automobile from Liberty’s insured, where the vehicle was listed in the policy and the accident occurred within thirty days of the sale. We agree with the conclusion reached by the trial court and affirm the award of summary judgment.
The essential facts are not in dispute. On August 20,2005, Judi Bavota (“Bavota”) sold a 1996 Chevrolet Blazer to her neighbor, Leo Callahan (“Callahan”). The purchase price was one thousand dollars, upon receipt of which Bavota assigned the title to Callahan. While driving the Blazer on September 1, 2005, Callahan collided with a vehicle driven by Vail. While both vehicles sustained substantial damage in the accident, no personal injuries were reported. There is no dispute that Callahan was responsible for causing the accident.
At the time of the sale, Bavota was insured by a standard policy issued by Liberty. The “Coverage Selection Page” of the policy listed the Blazer and a second vehicle. At the time of Callahan’s September 1 accident, Bavota’s license plates were on the Blazer and neither Bavota nor Callahan had notified the registry of motor vehicles or Liberty of the sale to Callahan.
Vail submitted a claim for her loss to Liberty When Liberty declined to pay the claim, Vail sent a G.L.c. 93A demand letter. On November 14, 2005, outside counsel for Liberty responded that because “contractual liability remains unclear,” Liberty was not offering to settle the claim. The correspondence also advised Vail that Liberty’s “investigation [was] ongoing.” On March 10, 2006, counsel for Liberty again wrote to Vail advising her that because “the Blazer was not owned by Ms. Bavota nor insured by Liberty Mutual on the date of [the] accident... Liberty Mutual has no duty to make an offer of settlement.”
On May 26, 2006, Vail filed a complaint against Callahan, Bavota, and Liberty. Counts 1 and 2 alleged that Callahan and Bavota acted negligently. Count 3 alleged negligent entrustment by Bavota, and Count 4 alleged violations of G.L.c. 93A and c. *18 176D by Liberty. In August, 2006, the trial court allowed a motion to sever and stay the claims against Liberty. On October 16, 2007, a default judgment entered against Callahan in the amount of $23,707.68. On August 27, 2010, Yail and Bavota submitted the negligence and negligent entrustment claims against Bavota to arbitration, and on September 9, 2010, the arbitrator awarded damages to Yail in the amount of $23,800.00. Liberty paid the arbitration award.
In November, 2010, Vail proceeded with discovery on the G.L.c. 93A and c. 176D claims against Liberty. In September, 2011, Liberty filed a motion for summary judgment. In October, 2011, that motion was denied. Discovery continued into December, 2012, when Vail filed a motion for summary judgment. Liberty followed with a cross motion for summary judgment. On January 10, 2013, Vail’s motion for summary judgment was denied. This time, however, Liberty’s motion was allowed. On January 23, 2013, a judgment in favor of Liberty entered.
This appeal involves an interpretation of various sections of the standard policy, including its “Automatic Termination” provisions, contained within the “Cancellation And Renewal” section of the policy. In relevant part, those provisions state:
Massachusetts law provides that your policy automatically terminates and a Notice of Cancellation will not be sent to you when:
1. You return the registration plates for your auto to the Registry of Motor Vehicles.
2. You purchase a new policy with another company covering your auto and a new Certificate of Insurance is filed with the Registry of Motor Vehicles.
3. You transfer title to your auto, and you do not register another auto. In this case, the policy will terminate 30 days from the date of transfer of title.
Vail contends that the transfer of title by Bavota to Callahan on August 20, 2005 triggered the thirty-day period referred to in the third paragraph above and, therefore, that her loss was covered by the policy. In its appellate submissions, Liberty does not dispute that the transfer of title extended the term of the policy. It does assert, however, that the “Automatic Termination” provisions do not extend coverage to include Vail’s loss. This argument is based on an interpretation of Part 4 of the standard policy, entitled “Damage to Someone Else’s Properly.” In relevant part, that section states: “We will also pay if someone else using your auto with your consent is legally responsible for the accident.” Liberty contends that while Bavota remained covered under the policy, the coverage did not include a loss resulting from Callahan’s negligence after the title was transferred.
“[The] [interpretation of an insurance policy is a question of law to be determined by the court.” Golchin v. Liberty Mut Ins. Co., 466 Mass. 156, 159 (2013). ‘We interpret the words of the standard policy in light of their plain meaning,... giving full effect to the document as a whole [,] ... considering] ‘what an objectively reasonable insured, reading the relevant policy language, would expect to be covered’ ... [and] interpreting] the provision of the standard policy in a manner consistent with the statutory and regulatory scheme that governs such policies.” Id. at 159-160, quoting Golchin v. Liberty Mut. Ins. Co., 460 Mass. 222, 225 (2011), and citing Given *19 v. Commerce Ins. Co., 440 Mass. 207, 209 (2003).
Liberty asks that we interpret the term “your auto” in Part 4 to mean an auto owed by the insured. We decline to do so. The term “your auto” is defined in Part 2 of the standard policy to mean: “The vehicle or vehicles described in the Coverage Selections Page.” Giving the defined term its “plain meaning,” we conclude that “your auto” does not relate to ownership but rather to whatever vehicle is described in the policy. The only vehicle listed in the policy and relevant to this appeal was the Blazer.
The remaining question is whether the extension covered Vail’s loss, resulting from Callahan’s negligence. We agree with Liberty that while the “Automatic Termination” provisions may extend the term of the policy, they do not serve to expand the scope of coverage beyond what previously existed. Part 4 limits third-party coverage to instances where “someone else using your auto with your consent is legally responsible for the accident.” Again, we have concluded that “your auto” refers to the Blazer, and the parties have agreed that Callahan was responsible for the accident. What remains for us to determine is the meaning of the term “your consent.” By definition, consent means “compliance in or approval of what is done or proposed by another.” Merriam-Webster’s Collegiate Dictionary 245 (10th ed. 2001). Implicit in that definition is the authority to give such approval. Simply stated, an individual has no authority to approve the use of a vehicle owned by another. ‘You or Your” is defined in Part 2 of the policy to refer to “the person (s) named in Item 1 of the Coverage Selections Page.” The only person listed in Item 1 is “Judi E. Bavota.” Since Bavota was not the title holder of the Blazer at the time of the accident, she had no authority to “consent” to Callahan’s use of the vehicle. Therefore, under the circumstances, Part 4 coverage was not available to cover Vail’s loss.
Accordingly, since the trial court properly granted summary judgment to Liberty as to Vail’s G.L.c. 93A and c. 176D claims, we dismiss this appeal.
So ordered.