Glennis Ogaldez brought suit under 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act, see G. L. c. 12, § 11I, alleging that the Department of Correction (DOC) and various DOC officials engaged in discriminatory and retaliatory acts leading to her wrongful termination. Ogaldez now appeals from the judgment after a judge allowed the defendants' motion to dismiss under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). We conclude that collateral estoppel bars Ogaldez's claims, as issues essential to her success on those claims were previously litigated and decided adversely against her by the Civil Service Commission (CSC) and the Department of Labor Relations (DLR).[3] We therefore affirm.
Background.[4] Ogaldez was employed as a correction officer from 1998 to 2013. On September 4, 2012, another correction officer, Rigabaut Aime, asked Ogaldez to be a witness to a dispute he was having with defendant Brian Foley. Later that day Foley reported Ogaldez for not following orders to return to her post. One week later the DOC placed Ogaldez on detachment leave with pay pending an investigation of the report.
On or around September 28, 2012, Ogaldez filed a charge with the DLR, alleging that the DOC retaliated against her for acting on Aime's request that she witness his interaction with Foley. In March of 2013, while the DLR case was still pending, the DOC concluded its investigation of Foley's report, found the insubordination charges justified, and terminated Ogaldez's employment. Ogaldez then appealed that decision to the CSC.
Both the CSC and the DLR conducted full adjudicatory hearings on Ogaldez's claims.[5] In July of 2014, the CSC issued a decision finding that Foley credibly testified that Ogaldez twice refused to follow his orders on September 4, 2012, that "Ogaldez's conduct constitutes substantial misconduct," and that she "was not treated in a disparate manner" given her "extensive" disciplinary record, which included five reports of insubordination. In May of 2015, a DLR hearing officer issued a decision finding that the DOC did not retaliate against Ogaldez by placing her on detachment leave. Ogaldez filed an administrative appeal, and the Commonwealth Employment Relations Board affirmed the hearing officer's decision.
Discussion. The doctrine of issue preclusion bars relitigation of an issue where "(1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication" and was "essential to the earlier judgment." Tuper v. North Adams Ambulance Serv., Inc., 428 Mass. 132, 134-135 (1998). All of these elements are met here and operate to bar Ogaldez from relitigating issues that are essential to her current claims.
First, the CSC and the DLR decisions constitute final judgments on the merits. "[A] final order of an administrative agency in an adjudicatory proceeding ... precludes relitigation of the same issues between the same parties, just as would a final judgment of a court of competent jurisdiction." Id. at 135, quoting Stowe v. Bologna, 415 Mass. 20, 22 (1993). See Green v. Brookline, 53 Mass. App. Ct. 120, 123-124 (2001). There is no indication in the record, and Ogaldez does not claim, that either agency's decision was modified in a proceeding for judicial review. Those decisions are thus final for preclusive purposes. See Brunson v. Wall, 405 Mass. 446, 451-453 (1989).
Second, Ogaldez -- "the party against whom preclusion is asserted," Tuper, 428 Mass. at 134 -- was a party to the prior adjudications. Ogaldez's argument that the individual defendants were not named in the agency proceedings is of no moment. "[O]ne not a party to the first action may use a judgment in that action defensively against a party who was a plaintiff in the first action on the issues which the judgment decided." Home Owners Fed. Sav. & Loan Ass'n v. Northwestern Fire & Marine Ins. Co., 354 Mass. 448, 455 (1968). See Brunson, 405 Mass. at 451 (though individual defendants were not named in earlier Massachusetts Commission Against Discrimination [MCAD] proceeding, they "nevertheless [were] entitled to raise as a defense the MCAD decision," which "concluded that the actions of the individual defendants were not based on the plaintiff's race or color").
Third, the pivotal issues raised in this case are identical to those in the prior adjudications. Though Ogaldez contends that the CSC and the DLR lacked authority to decide her "new" claims under 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act, "[c]ourts have repeatedly applied the doctrine of collateral estoppel to a second action asserting a different claim from the first." Alba v. Raytheon Co., 441 Mass. 836, 843 (2004). The focus is on identity of the issues, "whether on the same or a different claim." Id. at 841, quoting Martin v. Ring, 401 Mass. 59, 61 (1987). Thus, so long as the requirements of collateral estoppel are met, the findings of an administrative agency are entitled to preclusive effect in actions under 42 U.S.C. § 1983.[6] See Brunson, 405 Mass. at 448-451 (plaintiff's claim of race discrimination under 42 U.S.C. § 1983 precluded by MCAD's finding of no discrimination).
Construing the complaint liberally, Ogaldez claims (1) that the DOC subjected her to "disparate treatment by wrongfully terminating [her employment], while other male officers received far lesser discipline," (2) that Foley retaliated or discriminated against her by "fabricating a report accusing [her] of being insubordinate," causing the DOC to terminate her employment, and (3) that the DOC terminated her employment in retaliation for her filing complaints with the MCAD and the DLR.[7] These claims, however, are either dependent on issues that have already been decided adversely to Ogaldez by the CSC and the DLR or rest on allegations that fail to establish a plausible entitlement to relief.
With regard to disparate treatment, whether Ogaldez were to proceed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), or to try to prove her claim through other evidence raising an inference of discrimination, she must prove discriminatory intent on the part of the actual decision maker, namely, the Commissioner of Correction (commissioner). See Bennett v. Saint-Gobain Corp., 507 F.3d 23, 31 (1st Cir. 2007) ("Actionable discrimination cannot exist in a vacuum. Rather, the discriminatory intent of which [an employee] complains must be traceable to the person or persons who made the decision to fire [her]"). The complaint, however, raises no allegations supporting an inference that the commissioner's decision was motivated by discriminatory reasons.[8] Though Ogaldez alleges that Foley treated her in a disparate manner -- for example, by denying her vacation time "but approv[ing] a white male officer for the same date," and by "assign[ing her] to the same floor for every shift, while all the male officers were rotated" -- both the complaint and the CSC's decision establish that the commissioner, not Foley, was the one who made the decision to terminate Ogaldez's employment.
To be sure, "[w]here 'the decision makers relied on the recommendations of supervisors [whose motives have been impugned], the motives of the supervisors should be treated as the motives for the decision." Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 688 (2016), quoting Trustees of Forbes Library v. Labor Relations Comm'n, 384 Mass. 559, 569-570 (1981). Ogaldez's allegation that Foley fabricated his report for retaliatory or discriminatory reasons is relevant in this respect. But both the CSC and the DLR have already decided this issue against Ogaldez. The CSC -- which has the duty to adjudicate whether an employer's action was based on "any factor or conduct on the part of the employee not reasonably related to the fitness of the employee to perform in his position," G. L. c. 31, § 43 -- found "Foley more credible than Ogaldez and that a preponderance of the evidence support[ed his] report that he issued two orders to [Ogaldez] on the night of her shift on September 4, 2012 and that she failed to obey his orders." See G. L. c. 31, § 1 ("Basic merit principles" include "assuring fair treatment of all ... employees in all aspects of personnel administration without regard to ... race, color, ... [or] sex"). The DLR -- which has the duty to adjudicate whether an employer retaliated against an employee for engaging in a protected activity, see G. L. c. 150E, §§ 10 - 11 -- found that Ogaldez failed to meet her burden of proving that she was placed on detachment leave in retaliation for her participation in the incident concerning Aime. These findings preclude Ogaldez from relitigating whether Foley fabricated his report and, as a consequence, from establishing that the commissioner's decision rested on the recommendation of a supervisor with unlawful motives.[9]
Ogaldez's third claim, that the DOC retaliated against her for filing complaints with the MCAD and the DLR, fails to rise above the level of speculation. Ogaldez alleges only that she filed the complaints on September 28, 2012, and that the DOC terminated her employment less than six months later. But as the CSC found, Ogaldez had a long disciplinary history dating back to 2002. Moreover, Foley issued his report before Ogaldez filed any of her complaints. In these circumstances, the mere fact that the DOC terminated Ogaldez's employment after the filing of the complaints is insufficient to establish a plausible claim of retaliation. See Mole v. University of Mass., 442 Mass. 582, 592 (2004) ("That an employer knows of a discrimination claim and thereafter takes some adverse action against the complaining employee does not, by itself, establish causation").
Judgment affirmed.

Formerly the Labor Relations Commission.

We derive the facts from the second amended complaint and the DLR and CSC decisions, which the defendants attached to their motion to dismiss. The complaint refers to the DLR and the CSC proceedings, the decisions are matters of public record, and their authenticity is not in dispute. The judge could therefore consider them in resolving the motion to dismiss. See Polay v. McMahon, 468 Mass. 379, 381 n.3 (2014) ; Doe v. American Guar. & Liab. Co., 91 Mass. App. Ct. 99, 100-101 (2017). Moreover, even assuming that the motion was in substance one for summary judgment, we can "review the judge's dismissal ... as though [s]he had granted a motion for summary judgment," as "we perceive [no] prejudice to the plaintiff['s] right[ ] to present extraneous matters." Cousineau v. Laramee, 388 Mass. 859, 860 n.2 (1983). See Golchin v. Liberty Mut. Ins. Co., 466 Mass. 156, 159 (2013) ; White v. Peabody Constr. Co., 386 Mass. 121, 126-128 (1982). Either way, our review is de novo. See Polay, 468 Mass. at 382 ; Medina v. Hochberg, 465 Mass. 102, 105 (2013).

Ogaldez also filed a complaint with the Massachusetts Commission Against Discrimination (MCAD), which found a lack of probable cause on her claims of retaliation and discrimination. The defendants do not argue that this decision has preclusive effect, acknowledging that it is unclear whether the MCAD conducted a full adjudicatory hearing.

In contrast "unreviewed state administrative proceedings [would not] have preclusive effect on Title VII claims." University of Tenn. v. Elliott, 478 U.S. 788, 796 (1986). See Brunson, 405 Mass. at 449. Ogaldez makes no argument, however, why preclusion would not apply to her claim under the Massachusetts Civil Rights Act. That claim is, in any event, barred by the exclusivity provision of G. L. c. 151B, § 9. See Green v. Wyman-Gordon Co., 422 Mass. 551, 555 (1996) ("where c. 151B applies, a person may not evade its procedural requirements by recasting a discrimination claim as a violation of ... the civil rights act").

To the extent Ogaldez bases her claims on any other conduct, she has not alleged sufficient facts "to raise a right to relief above the speculative level." Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

As the CSC found, the commissioner terminated Ogaldez's employment, after a hearing, "in light of her extensive prior disciplinary history and that she had received a final warning."

Ogaldez's claims of conspiracy and respondeat superior liability are also precluded because they rest on the same underlying allegations of discrimination and retaliation by Foley. In any event Ogaldez failed to allege facts plausibly suggesting an entitlement to relief on either claim.