*GPL Enterprise, LLC v. Certain Underwriters at Lloyd's, et al.*, No. 302, Sept. Term 2021.  Opinion by Arthur, J.

**INSURANCE—COVERAGE FOR ECONOMIC LOSSES RESULTING FROM PANDEMIC**

A commercial property insurance policy that covers "direct physical loss of or damage to" property does not cover business-interruption losses resulting from the COVID-19 virus or from an emergency order by the Governor of Maryland that indefinitely suspended all indoor service at restaurants and bars during the pandemic.

In this case, a restaurant obtained a commercial property insurance policy that provided coverage for "direct physical loss of or damage to" the restaurant.  The policy included business-interruption coverage, which insured against the loss of business income and the incurrence of expenses resulting from the suspension of business operations "caused by direct physical loss of or damage to property at" the restaurant.  Because neither the virus itself nor the shutdown order resulted in "direct physical loss of or damage to" property, this policy did not cover the economic losses that the restaurant suffered because of the virus or because of the shutdown order.

**CIVIL PROCEDURE -- DECLARATORY JUDGMENTS**

Ordinarily, a court should dismiss a claim for a declaratory judgment only when the plaintiff is not entitled to any kind of declaration at all, as, for example, when the issue is not justiciable or the plaintiff lacks standing.  A court should not dismiss a claim for a declaratory judgment merely because the plaintiff is not entitled to the specific declaration that it requests.  Here, the court erred in dismissing a claim for a declaratory judgment rather than declaring the parties' rights.  The error, however, is not jurisdictional.  The case is remanded so that the court can enter a declaration consistent with this opinion.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 302

September Term, 2021

_____

GPL ENTERPRISE, LLC

v.

CERTAIN UNDERWRITERS AT LLOYD'S,
ET AL.

_____

Graeff,
Arthur,
Eyler, James R.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Arthur, J.

_____

Filed: May 24, 2022

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

A restaurant was ordered to close its business for in-person dining during the early days of the COVID-19 pandemic. The restaurant made a claim against its property insurer, claiming to have suffered business-interruption losses as a result of the shut-down order and the virus. The insurer denied the claim, the restaurant filed suit for damages and declaratory relief, and the Circuit Court for Frederick County concluded that the policy did not cover the restaurant's losses.

We affirm the conclusion that the policy does not cover the restaurant's losses, but we remand the case to the circuit court because it failed to issue a declaratory judgment concerning the parties' rights.

## BACKGROUND

In early 2020, the novel coronavirus, COVID-19, began spreading throughout the United States. On March 11, 2020, the World Health Organization declared that COVID-19 was a pandemic. On March 16, 2020, the Governor of Maryland issued an emergency order that closed all Maryland restaurants and bars indefinitely in response to the pandemic.

Appellant GPL Enterprise, LLC, operates a restaurant known as The Anchor Bar. The Governor's order prohibited GPL from operating its restaurant at full capacity. Although the order permitted GPL to conduct a carry-out business and to deliver orders to customers, GPL found that that option was unviable. GPL incurred significant losses as a result as the Governor's order.

GPL had procured a commercial property insurance policy from a syndicate of underwriters at Lloyd's, the insurance market in London. The policy, which is identical

in form to policies issued by many other insurers,[1] provides coverage for "direct physical loss of or damage to Covered Property," which includes GPL's restaurant.  The policy includes business-interruption coverage, which insures against the loss of business income and the incurrence of expenses due to the suspension of business operations, provided that the suspension is "caused by direct physical loss of or damage to property at" the restaurant.  The policy also includes coverage against the loss of business income and the incurrence of expenses if a civil authority prohibits access to the restaurant as a result of damage to property other than the restaurant, such as an adjacent property.

On March 30, 2020, GPL made a written demand for coverage under its policy.  In its demand, GPL asserted that, as a result of the COVID-19 virus and the Governor's order, it had suffered direct physical harm, loss, or damage to its premises.  It also asserted a claim for business interruption coverage because of the necessary suspension of operations in response to the Governor's order.  It noted that the policy did not contain an exclusion for losses due to a virus or bacteria.  Finally, it asserted an additional claim for business interruption coverage on the premise that the Governor's order (an act of a civil authority) had prohibited access to the restaurant.

The underwriters denied the claim.  Although the underwriters did not clearly articulate their rationale, they appear to have reasoned that neither the virus nor the Governor's order had caused "direct physical loss of or damage to" GPL's restaurant, a necessary precondition for coverage under the policy.  In addition, the underwriters

---

[1] The policy form is identified as CP 00 10 10 12.  The form was copyrighted by Insurance Services Office, Inc., in 2011.

asserted the policy did not cover the loss because "there [was] no evidence that . . . business operations [had] been suspended because of a direct physical loss" and "no evidence that there [had] been physical damage to [GPL's] property or to an adjacent property[.]" The underwriters did not address the absence of an exclusion for losses due to a virus or bacteria.

GPL responded by filing a two-count complaint in the Circuit Court for Frederick County. In brief summary, the complaint described the effect of the virus and the Governor's order; recounted that the underwriters had denied coverage on the ground that GPL had not suffered "direct physical loss of or damage to" its property; alleged that the policy terms are ambiguous; invoked the absence of a virus exclusion as evidence of coverage; and cited two, unreported trial court opinions that had found coverage for COVID-related claims. In Count I, GPL alleged breach of contract. In Count II, GPL requested that the court declare the parties' rights under the policy.[2]

The underwriters moved to dismiss the complaint. Among other things, they argued that GPL had suffered economic loss alone, because it had suffered no "direct physical loss of or damage to" its restaurant. They also argued that GPL had no right to business-interruption coverage because the suspension of GPL's operations was not caused by "direct physical loss of or damage to" the restaurant and because the civil

---

[2] As defendants, GPL named two parties: "Lloyd's of London" and Certain Underwriters at Lloyd's, London, Subscribing to Policy No. DTW01619P00011. "Lloyd's of London" (aka "Lloyd's") is an insurance market; it is not an insurer, it did not insure GPL, and it should not have been named as a defendant. The correct defendants were the underwriters at Lloyd's who subscribed to GPL's policy, Policy No. DTW01619P00011.

3

authorities had not prohibited access to the restaurant as a result of damage to other nearby property. The underwriters rebuffed GPL's argument that the policy covers damages caused by a virus because it did not contain an exclusion for those damages.

GPL opposed the motion to dismiss. The motion to dismiss included excerpts from the policy (which had already been attached to the complaint) and a three-paragraph affidavit from GPL's managing member. In the affidavit, the managing member authenticated the policy, discussed the effect of the virus and the Governor's order on GPL's income, and described GPL's unsuccessful effort to reopen on a carry-out basis.

A few months later, GPL amended the complaint to allege additional facts in support of its claim for coverage. The amended complaint did not alter the relief requested.

GPL filed what it called a motion for summary judgment at the same time as it filed its amended complaint. The motion incorporated the arguments that GPL had made in response to the underwriters' motion to dismiss. The motion did not include any evidentiary materials, but it did attach a copy of an unreported trial court opinion from North Carolina.

The underwriters moved for summary judgment on the amended complaint. In support of the motion, the underwriters incorporated their motion to dismiss the initial complaint.

After a hearing on April 27, 2021, the circuit court granted the underwriters' motion to dismiss and denied GPL's motion for summary judgment. The court reasoned that GPL did not claim to have suffered physical damage to its property or the loss of its

property as a result of the virus or the Governor's order.

The court embodied its ruling in a written order, but it did not declare the parties' rights.

GPL noted a timely appeal. It raises one question: Did the circuit court err by granting the underwriters' motion to dismiss and denying GPL's motion for summary judgment?

Like the vast majority of courts that have considered the question presented in this case,[3] including every appellate court that has considered the question,[4] we conclude that

---

[3] For a compilation of the cases that have considered this issue before approximately October 27, 2021, see the addendum to the Brief of Amicus Curiae American Property Casualty Insurance Association. For cases decided since that date, see Practical Law Commercial Transactions, *Key COVID-19 Insurance Coverage Cases Tracker (US): 2020 and 2021*, Prac. L. Prac. Note w-024-9391, Westlaw (database updated Jan. 2022); and Practical Law Commercial Transactions, *Key COVID-19 Insurance Coverage Cases Tracker (US): 2022*, Prac. L. Prac. Note w-034-1939, Westlaw (database updated Apr. 2022). Two additional cases, not captured above, are *Verveine Corp. v. Strathmore Ins. Co.*, 184 N.E.3d 1266 (Mass. 2022); and *Estes v. Cincinnati Ins. Co.*, 23 F.4th 695 (6th Cir. 2022).

[4] *See Verveine Corp. v. Strathmore Ins. Co.*, 184 N.E.3d 1266, 1275 (Mass. 2022) (citing *Uncork & Create LLC v. Cincinnati Ins. Co.*, 27 F.4th 926, 930-32 (4th Cir. 2022); *Terry Black's Barbecue Dallas, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 456-58 (5th Cir. 2022); *10012 Holdings, Inc. v. Sentinel Ins. Co.*, 21 F.4th 216, 221-22 (2d Cir. 2021); *Goodwill Indus. of Cent. Okla., Inc. v. Philadelphia Indem. Ins. Co.,* 21 F.4th 704, 710-12 (10th Cir. 2021); *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 331-34 (7th Cir. 2021); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 890-93 (9th Cir. 2021); *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 401-06 (6th Cir. 2021); *Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697 (11th Cir. Aug. 31, 2021); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1143-44 (8th Cir. 2021); *Inns by the Sea v. California Mut. Ins. Co.*, 286 Cal.Rptr.3d 576, 585 (Ct. App. 2021); *Sweet Berry Café, Inc. v. Society Ins., Inc.* 2022 IL App (2d) 210088, ¶ 39, ___ N.E.3d ___ (Ill. App. Ct. 2022); *Indiana Repertory Theatre v. Cincinnati Cas. Co.*, 180 N.E.3d 403, 408-09 (Ind. Ct. App. 2022); *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, ___ N.W.2d ___, 2022 WL

the policy at issue affords no coverage for the purely economic losses that GPL suffered in this case. Hence, we shall affirm the dismissal of GPL's claim for breach of contract and the entry of summary judgment against GPL.

Nonetheless, because the court disposed of GPL's claim for a declaratory judgment without declaring the parties' rights as it was required to do, we shall remand the case to the circuit court for the entry of a declaratory judgment consistent with this opinion.

## STANDARD OF REVIEW

When deciding a motion to dismiss a complaint, the court assumes the truth of the complaint's factual allegations and of any reasonable inferences that can be drawn therefrom. *Margolis v. Sandy Spring Bank*, 221 Md. App. 703, 713 (2015). A court, however, need not accept the truth of pure legal conclusions. *Id.* A court should dismiss a complaint for failure to state a claim only if the alleged facts and reasonable inferences would fail to afford relief to the plaintiff. *Id.* We conduct a *de novo* review of the circuit court's decision to grant a motion to dismiss. *Id.*

A court cannot dismiss a claim for a declaratory judgment unless the plaintiffs are not entitled to a declaration of their rights (*Broadwater v. State*, 303 Md. 461, 467 (1985)), as, for example, when the case is not justiciable, when the case is unripe or moot, or when the plaintiff lacks standing. A court may not dismiss a claim for a

---

301555 (Feb. 1, 2022); *Sanzo Enters. LLC v. Erie Ins. Exch.*, 182 N.E.3d 393, 401-03 (Ohio Ct. App. 2021)); *Estes v. Cincinnati Ins. Co.*, 23 F.4th 695, 701 (6th Cir. 2022).

6

declaratory judgment simply because the court disagrees with the declaration that the plaintiffs have requested.

Maryland Rule 2-501(f) permits a court to grant a motion for summary judgment "if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." The issue of whether a trial court properly granted summary judgment is a question of law. *Butler v. S & S P'ship*, 435 Md. 635, 665 (2013) (citing *D'Aoust v. Diamond*, 424 Md. 549, 574 (2012)). This Court conducts a *de novo* review to determine whether the circuit court's conclusions were legally correct. *D'Aoust v. Diamond*, 424 Md. at 574.

## DISCUSSION

### I. The Interpretation of the Policy

#### A. The Interpretation of Insurance Policies

In determining the rights of the insured and the obligations of the insurer under an insurance contract, we apply the following well-established principles:

> We construe an insurance policy according to contract principles. Maryland follows the objective law of contract interpretation. Thus, the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract. When the clear language of a contract is unambiguous, the court will give effect to its plain, ordinary, and usual meaning, taking into account the context in which it is used. Unless there is an indication that the parties intended to use words in the policy in a technical sense, they must be accorded their customary, ordinary, and accepted meaning. Although Maryland does not follow the rule that insurance contracts should be construed against the insurer as a matter of course, any ambiguity will be construed liberally in favor of the insured and against the insurer as drafter of the instrument.

7

*Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Jeffers*, 244 Md. App. 471, 498-99 (citing *Maryland Cas. Co. v. Blackstone Int'l Ltd.*, 442 Md. 685, 694-95 (2015)), *cert. denied*, 468 Md. 549 (2020).

A term in an insurance policy is considered ambiguous if, when read by a reasonably prudent layperson, the language is susceptible of more than one meaning. *United Servs. Auto. Ass'n v. Riley*, 393 Md. 55, 80 (2006). A contract is not ambiguous merely because the parties do not agree on its meaning. *Fultz v. Shaffer*, 111 Md. App. 278, 299 (1996).

### B. The Policy Language: Direct Physical Loss of or Damage to Property

The policy at issue in this case is a commercial property insurance policy. The main purpose of such a policy is to insure the property that the insured uses in its business against direct physical loss or damage as a result (for example) of a fire, an earthquake, a tornado, an ice storm, a hail storm, a meteor strike, theft, vandalism, etc.

The policy in this case includes business-interruption coverage for the loss of business income and the incurrence of additional expenses in case of direct physical loss of or damage to insured property. Thus, for example, the policy might cover the loss of income that GPL suffered if it were unable to operate its restaurant because of fire damage, as well as the additional expenses that GPL incurred in renting new space and buying new equipment and inventory.

The policy also includes business-interruption coverage for the loss of business income and the incurrence of additional expenses in case a civil authority prohibits access

8

to the insured's business as a result of damage to surrounding property or dangerous physical conditions resulting from that damage. Thus, for example, the policy might cover the loss of income that GPL might suffer if the authorities prohibited customers from accessing its restaurant because of a fire at an adjacent structure.

The linchpin of the policy is the insuring agreement. Subject to the terms, conditions, and exclusions in the policy, the insuring agreement obligates the underwriters to "pay for *direct physical loss of or damage to* Covered Property at the premises described in the Declarations," which includes GPL's restaurant. (Emphasis added.) The central question in this case involves the meaning of the phrase "direct physical loss of or damage to" property. More specifically, the central question is whether the Governor's order or the COVID-19 virus resulted in "direct physical loss of or damage to" GPL's property.

No Maryland appellate court has decided this specific question, but hundreds of courts throughout the United States have decided it in interpreting policies that are substantially identical to the policy in this case. Although the policies do not define the operative terms, those courts have held, almost unanimously, that the phrase "physical loss of or damage to" property is unambiguous and that the policies afford no coverage in circumstances such as those of this case.[5]

_____

[5] *See* notes 3 and 4, above. "[T]he modifier 'direct physical' applies to both 'loss' and 'damage.'" *Bel Air Auto Auction, Inc. v. Great Northern Ins. Co.*, 534 F. Supp. 3d 492, 504 (D. Md. 2021) (citing *AFLAC, Inc. v. Chubb & Sons, Inc.*, 581 S.E.2d 317, 319 (Ga. Ct. App. 2003); *Ward Gen. Ins. Servs., Inc. v. Emp'rs Fire Ins. Co.*, 7 Cal.Rptr.3d 844, 849 (Ct. App. 2003); *Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287-88 (S.D.N.Y. 2005)).

For example, in a case involving identical policy language and coverage claims like those in this case, United States District Judge Ellen Lipton Hollander, formerly of this Court, wrote that "[t]he inclusion of the modifier 'physical' in the phrase 'physical loss or damage' unambiguously requires some form of material alteration to the property that has experienced 'loss or damage.'" *Cordish Cos., Inc. v. Affiliated FM Ins. Co.*, ___ F. Supp. 3d ___, 2021 WL 5448740, at \*13 (D. Md. Nov. 22, 2021); *accord Hamilton Jewelry, LLC v. Twin City Fire Ins. Co.*, 560 F. Supp. 3d 956, 967 (D. Md. 2021) ("'direct physical loss or damage' to property requires some showing of actual or tangible harm to or intrusion on the property itself'") (quoting *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, 504 F. Supp. 3d 1191, 1200 (D. Kan. 2020)); *Bel Air Auto Auction Inc. v. Great Northern Ins. Co.*, 534 F. Supp. 3d 492, 504 (D. Md. 2021) (asserting that courts have "overwhelming[ly] held that the phrase [direct physical loss of or damage to property] requires tangible, physical losses to property, or, at the very least, permanent dispossession of the property rendered unfit or uninhabitable by physical forces"). "Economic loss alone is not sufficient to trigger coverage" under this policy form; "physical alteration to the property is necessary. *Cordish Cos., Inc. v. Affiliated FM Ins. Co.*, ___ F. Supp. 3d ___, 2021 WL 5448740, at \*14 (citing 10A Steven Plitt et al., *Couch on Insurance* § 148.46 (3d ed. 2021)).

Furthermore, "[t]he term 'physical,'" as used in the policy, "'clearly indicates that the damage must affect the good itself, rather than the [insured's] use of that good.'" *Cordish Cos., Inc. v. Affiliated FM Ins. Co.*, ___ F. Supp. 3d ___, 2021 WL 5448740, at \*14 (quoting *M Consulting and Export, LLC v. Travelers Cas. Ins. Co.*, 2 F. Supp. 3d

10

730, 736 (D. Md. 2014)).  The requirement of *physical* loss or damage "'is widely held to exclude alleged losses that are intangible and incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.'"  *Id*. (quoting *Hartford Ins. Co. v. Mississippi Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006)); *accord Verveine Corp. v. Strathmore Ins. Co.*, 184 N.E.3d 1266, 1275 (Mass. 2022) (collecting numerous authorities for the proposition that "[e]very appellate court that has been asked to review COVID-19 insurance claims has agreed with this definition for this language or its equivalent").  Thus, "'direct physical loss or damage to property does not include loss of use unrelated to tangible, physical damage.'"  *Cordish Cos., Inc. v. Affiliated FM Ins. Co*., ___ F. Supp. 3d ___, 2021 WL 5448740, at \*14 (quoting *Bel Air Auto Auction Inc. v. Great Northern Ins. Co*., 534 F. Supp. 3d at 503).

In this case, the Governor's order "did not create a direct physical loss of property or direct physical damage to it."  *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 402 (6th Cir. 2021).  Unlike a fire or an earthquake, the order had no tangible, physical impact on GPL's restaurant or on the property inside the restaurant.  *See id.*  The order "simply prohibited one use of the property."  *Id.*  The physical condition of the insured property was exactly the same the day after the Governor issued the order as it was the day before.  GPL lost one use of its property as the result of a legal prohibition on that use, not because of any "'actual or tangible harm to or intrusion on the property itself.'"  *Hamilton Jewelry, LLC v. Twin City Fire Ins. Co*., 560 F. Supp. 3d at 967

11

(quoting *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, 504 F. Supp. 3d at 1200). As a matter of law, therefore, the Governor's order did not cause "direct physical loss of or damage to" GPL's property.

As the United States Court of Appeals for the Sixth Circuit has explained, the effect of the shut-down order was to "temporarily rezone[] all restaurants in the State solely for takeout dining." *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th at 402. But "[e]ven as restaurant owners no doubt would suffer from such a decision and no doubt would have reason to object to it, the government regulation would not create a direct physical loss of property." *Id.* "A loss of use simply is not the same as a physical loss." *Id.* Similarly, "[a] mere loss of use of property is not 'physical damage' within the meaning of Maryland law." *Bel Air Auto Auction, Inc. v. Great Northern Ins. Co.*, 534 F. Supp. 3d at 509. GPL cannot invoke the Governor's shut-down order as a basis to trigger coverage under its policy.

Nor has GPL alleged facts sufficient to establish that the COVID-19 virus somehow physically altered the structure of the restaurant so as to trigger coverage under the policy. "'Although the Virus can harm humans, it does not physically alter structures and therefore does not result in coverable property loss or damage.'" *Cordish Cos., Inc. v. Affiliated FM Ins. Co.*, ___ F. Supp. 3d ___, 2021 WL 5448740, at \*16 (quoting *Ralph Lauren Corp. v. Factory Mut. Ins. Co.*, 2021 WL 1904739, at \*3 n.6 (D.N.J. May 12, 2021)); *see also Verveine Corp. v. Strathmore Ins. Co.*, 184 N.E.3d at 1276 (stating that, "[a]lthough caused, in some sense, by the physical properties of the virus, the suspension of business at the restaurants was not in any way attributable to a direct physical effect on

12

the plaintiffs' property that can be described as loss or damage"). The "[e]vanescent presence of a harmful airborne substance that will quickly dissipate on its own, or surface-level contamination that can be removed by simple cleaning, does not physically alter or affect property." *Verveine Corp. v. Strathmore Ins. Co.*, 184 N.E.3d at 1276 (citing *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th at 403-04). A court is not required to accept the truth of a factually-unsupported legal conclusion to the contrary. *See*, *e.g.*, *Margolis v. Sandy Spring Bank*, 221 Md. App. at 713.

GPL relies on a handful of *nisi prius* decisions in which the courts have allowed a claim like GPL's to proceed. Those cases are, in the words of Judge Paul W. Grimm of the United District Court for the District of Maryland, "clear outliers that do not meaningfully weigh against the overwhelming authority that supports the conclusion that 'direct physical loss or direct physical damage' requires a showing of 'actual or tangible harm to or intrusion on the property itself.'" *Hamilton Jewelry, LLC v. Twin City Fire Ins. Co.*, 560 F. Supp. 3d at 968 (footnotes omitted) (quoting *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, 504 F. Supp. 3d at 1201-02). We decline to follow the cases on which GPL relies.

### C. Business-Interruption Coverage

Other terms in the policy reinforce the conclusion that GPL did not suffer a direct physical loss of property or damage to its property. *See Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th at 402. The business-interruption coverage, on which GPL seeks to recover, states that the underwriters will pay for the actual loss of business income that GPL sustains due to the necessary suspension of its operations during the

13

"period of restoration."  For purposes of lost business income, the policy defines the "period of restoration" as the period of time that begins "72 hours after the time of direct physical loss or damage" and ends when "the property should be repaired, rebuilt or replaced with reasonable speed and similar quality" or "when business is resumed at a new permanent location," whichever comes first.

This policy language assumes that a covered loss can be remedied by repairing, rebuilding, or replacing the lost or damaged property or by relocating the insured's business to a new location.  *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th at 403.  Thus, the language "clearly implies that the property has not experienced physical loss or damage in the first place unless there needs to be active repair or remediation measures to correct the claimed damage or the business must move to a new location."  *Verveine Corp. v. Strathmore Ins. Co.*, 184 N.E.3d at 1275.  In this case, however, GPL could not alleviate the deleterious effect of the virus or of the Governor's order by repairing, rebuilding, or replacing its restaurant or by relocating its operations.  *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th at 403.  No repair, reconstruction, or replacement and no relocation could effectuate a return to in-person dining at GPL's restaurant while the Governor's order was in effect.  Because GPL had nothing to repair, rebuild, replace, or relocate, it follows that GPL suffered no direct physical loss of or damage to property. *Id.*

### D.  Civil Authority Coverage

GPL argues that the civil authority coverage obligates the underwriters to cover its losses.  It is obvious from the language of the policy that the coverage does not apply.

14

In general, the civil authority coverage applies when the authorities have prohibited access to the insured's premises because of damage to nearby property. Thus, a necessary condition of that coverage is that the authorities are responding to dangerous physical conditions or securing their unimpeded access to the damaged property (as, for example, when firefighters are fighting a fire or the fire marshal is investigating the cause of a fire). GPL, however, does not allege that its losses occurred because the civil authorities prohibited access to its restaurant in order to respond to dangerous conditions at a damaged property in the vicinity or to secure unimpeded access to the damaged property. Therefore, GPL has no right to coverage under this policy provision.

### E. Direct Physical Loss as Distinct from Direct Physical Damage

GPL cites a number of cases that hold that an insured may suffer direct physical loss even in the absence of physical damage to its property, provided that the property is rendered unhabitable or unusable because of some form of physical contamination. For example, GPL cites the leading case of *Western Fire Insurance Co. v. First Presbyterian Church*, 437 P.2d 52, 55 (Colo. 1968), where the insured's church became uninhabitable and highly dangerous to use because of the seepage of large quantities of gasoline into the soil beneath it. Although the structure itself may have been undamaged, the Colorado court concluded that the insured had established a direct physical loss, which the policy covered. *Id.*[6]

---

[6] Another, similar case is *TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 708-10 (E.D. Va. 2010), in which the court found that the insured had suffered direct physical loss because his house was allegedly rendered uninhabitable by toxic gases released from defective drywall. Yet another frequently-cited case on the subject is *Port Authority of*

15

This case is not quite the same. Here, GPL's restaurant did not become unusable for in-person dining because of the harmful effects of a noxious gas or of some physical form of physical contamination; it became unusable for in-person dining because the Governor entered an order prohibiting in-person dining. Moreover, unlike the gasoline vapors that contaminated the church, the virus itself did not render GPL's restaurant unsafe and unusable for any and all purposes whatsoever. GPL could and even did put the property to other uses, including operating a carry-out business. GPL opted not to put the property to that use because it was unprofitable, not because the property was uninhabitable.

## F. Loss of Use as "Direct Physical Loss"

In a variant of its argument concerning the difference between "direct physical loss" and "direct physical damage," GPL argues that "loss" must mean something other than "damage," or else "loss" would be superfluous. GPL cites an unreported opinion, which has since been reversed on appeal,[7] for the proposition that "direct physical loss"

---

*N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226 (3d Cir. 2002). There, the court said that an insured may suffer a direct physical loss "if an actual release of asbestos fibers from asbestos containing materials has resulted in contamination of the property such that its function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable, or if there exists an imminent threat of the release of a quantity of asbestos fibers that would cause such loss of utility." *See id.* at 236. The court actually held, however, that "[t]he mere presence of asbestos or the general threat of its future release is not enough to survive summary judgment or to show a physical loss or damage to trigger coverage." *Id.*

[7] *James W. Fowler Co. v. QBE Ins. Co.*, 474 F. Supp. 3d 1149 (D. Or. 2020), *rev'd*, 2021 WL 4922552 (9th Cir. Oct. 21, 2021). The *Fowler* case does not involve losses sustained in the COVID-19 pandemic. On appeal, the case turned on the presence of a factual dispute regarding whether the insured had suffered "direct physical loss."

16

does not require physical damage.  From there, GPL proceeds to equate the limitation on the use of its property, resulting from the Governor's order, with the "direct physical loss" of property.

GPL's argument "skates over the unrelenting imperative that the policy covers only 'physical' losses." *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th at 404.  The "prohibition on indoor dining no doubt caused an economic loss for" GPL.  *Id.*  "But it did not cause a direct, physical loss of property, which is a precondition for the business suspension coverage in the policy and in fact for most coverage in the policy."  *Id.*  GPL alleges a purely economic loss, which the policy does not cover.  *See*, *e.g.*, *LexFit, LLC v. West Bend Mut. Ins. Co.*, 543 F. Supp. 3d 528, 534 (E.D. Ky. 2021) (concluding that "a purely economic loss cannot qualify as a 'direct physical loss'").

As the Sixth Circuit has explained, a "direct physical loss" "could occur whenever a policy holder is deprived of property without any damage to it, say a portable grill or a delivery truck stolen without a scratch." *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th at 404.  It may also occur when the insured's property becomes completely unhabitable or unusable because of some form of physical contamination.  GPL, however, has alleged no such loss in this case.

Furthermore, GPL's theory sidesteps the basic requirements for establishing coverage.  Under GPL's policy, an insured can establish a business-interruption claim if a "Covered Cause of Loss" (e.g., a fire) causes direct physical loss of or damage to the insured's property, which causes the suspension of the insured's operations, which, in turn, causes the insured to lose business income and to incur additional expenses until the

17

property is replaced, repaired, or rebuilt or the business is relocated. Under GPL's theory, however, the suspension of operations (by way of the Governor's order) causes what GPL characterizes as the "direct physical loss" – the limitation on its use of the property. GPL does not explain how the Governor's order "can be both the first step in the sequence that triggers business income coverage (the 'Covered Cause of Loss') and the third step (the suspension of operations caused by the 'Covered Cause of Loss') at the same time." *LexFit, LLC v. West Bend Mut. Ins. Co*., 543 F. Supp. 3d at 533.

### G. *Berry v. Queen*

In response to the overwhelming number of cases that hold that coverage for "physical loss of or damage to property" does not entail coverage for the loss of use of property that has not been physically lost or damaged, GPL cites *Berry v. Queen*, 469 Md. 674 (2020). According to GPL, *Berry* stands for the proposition that "damage to property" includes damages for the loss of use of property. *Berry* is inapposite.

In *Berry* the Court did not interpret the language of a commercial property insurance policy like the policy at issue in this case. In fact, in *Berry* the Court did not interpret the language of any kind of insurance policy at all. Instead, *Berry* construed the language of Maryland's uninsured motorist statute, Md. Code (1995, 2017 Repl. Vol., 2019 Supp.), § 19-509(e) of the Insurance Article. *See Berry v. Queen*, 469 Md. at 679.

The specific question before the *Berry* Court was "whether the phrase 'damage to property,' [which is] incorporated by reference in the uninsured motorist statute, requires an insurer to reimburse loss of use damages, such as rental car costs, to an insured." *Id.* In holding that the statute does require an insurer to reimburse its insured for the loss of

use of an insured vehicle that has suffered property damage, the Court relied on the "ordinary and popular meaning of the words 'damage' and 'property,'" earlier cases concerning the categories of damages that a plaintiff can recover for property damage at common law, and a case interpreting a previous version of a similar statute. *See id.* at 699-700.

Judge Richard D. Bennett of the United States District Court for the District of Maryland has already explained that *Berry* has no bearing on this case, first, because *Berry* (unlike this case) "involved physical harm or injury to property." *Bel Air Auto Auction, Inc. v. Great Northern Ins. Co.*, 534 F. Supp. 3d at 504. In *Berry* the insureds lost the use of their cars because the cars were physically damaged, and the insureds' losses included the cost of renting cars while their damaged cars were being repaired. Quoting the insurer in the *Bel Air Auto* case, Judge Bennett wrote: the *Berry* Court "'was not asked to hold, nor did it hold . . . that a policyholder could make an uninsured motorist claim for rental car coverage every time it suffered a "loss of use" of a vehicle untethered to physical damage to that vehicle.'" *Id.* Here, by contrast, GPL's property has suffered no physical damage.

In any event, unlike the policy that we have been called upon to interpret, the uninsured motorist statute does "not include the modifier 'physical," which "expressly limits coverage to tangible, physical changes to insured property." *Id.* A case concerning a statute, with language different from that of the insurance policy that we are required to construe, sheds little light on the correct interpretation of the policy.

19

**H. The Absence of the Virus Exclusion**

GPL observes that some commercial property insurance policies contain a so-called virus exclusion,[8] but that its policies do not. GPL argues that the absence of the virus exclusion implies that the policy covers losses attributable to COVID-19. GPL's argument misapprehends some of the basic principles pertaining to the interpretation of an insurance policy.

The "'[a]bsence of an express exclusion does not operate to create coverage.'" *Verveine Corp. v. Strathmore Ins. Co.*, 184 N.E.3d at 1277 (quoting *Given v. Commerce Ins. Co.*, 796 N.E.2d 1275, 1279 (Mass. 2003)). "Rather, 'when an occurrence is clearly not included within the coverage afforded by the insuring clause, it need not also be specifically excluded.'" *Id*. (quoting *Inns by the Sea v. California Mut. Ins. Co.*, 286 Cal.Rptr.3d 576, 594 (Ct. App. 2021)). "'Although insurance provisions that are plainly expressed must be enforced . . . those that are conspicuously absent should not be implied.'" *Given v. Commerce Ins. Co.*, 796 N.E.2d at 1279 (quoting *Massachusetts Insurers Insolvency Fund v. Premier Ins. Co.*, 787 N.E.2d 550, 554 (Mass. 2003)).

---

[8] Form CP 01 40 07 06, copyrighted in 2006 by ISO Properties, Inc., states, in pertinent part:

> We will not pay for loss or damage caused by or resulting from any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease.

> However, this exclusion does not apply to loss or damage caused by or resulting from "fungus," wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

In short, "'an exclusion cannot grant coverage.'" *Bel Air Auto Auction, Inc. v.*

*Great Northern Ins. Co.*, 534 F. Supp. 3d at 506-07 (quoting *Bluegrass Oral Health*

*Center, PLLC v. Cincinnati Ins. Co*., 2021 WL 1069038, at \*4 (W.D. Ky. Mar. 18, 2021))

(further quotation marks omitted).  In other words, the absence of an exclusion does not

imply the existence of coverage.  Instead, we determine whether a policy affords

coverage by looking to what the insurer agreed to insure.

Under the policy at issue in this case, the underwriters agreed to insure against the

"physical loss of or damage to" to the insured's property.  GPL did not allege facts

sufficient to establish that it suffered the "physical loss of or damage to" its property.

Therefore, even without a virus exclusion, the policy affords no coverage.[9]

## II.     The Declaratory Judgment

In Count II of its amended complaint, GPL requested that the court declare the

parties' rights under the policy.  The court, however, dismissed the amended complaint,

including the count for declaratory relief, without declaring the parties' rights.  In so

doing, the court erred.

"[A] court may grant a declaratory judgment . . . if it will serve to terminate the

uncertainty or controversy giving rise to the proceeding," and if the assertion of a "legal

relation, status, right, or privilege . . . is challenged or denied by an adversary party . . . ."

---

[9] The Supreme Judicial Court of Massachusetts explained why a virus exclusion would not be superfluous even though the policy affords no coverage for economic losses resulting from the COVID-19 pandemic: "Most obviously, the exclusion would have independent significance where, for example, personal property, such as food, becomes physically contaminated or infected with a virus, requiring its destruction or some form of remediation." *Verveine Corp. v. Strathmore Ins. Co.*, 184 N.E.3d at 1278.

Md. Code (1974, 2020 Repl. Vol.), § 3-409(a) of the Courts and Judicial Proceedings Article. "In an action properly brought under the Declaratory Judgments Act, the court ordinarily must declare the rights of the parties in light of the issues raised." *Jennings v. Government Emps. Ins. Co.*, 302 Md. 352, 355 (1985). "[D]ismissal 'is rarely appropriate in a declaratory judgment action.'" *Christ ex rel. Christ v. Maryland Dep't of Nat. Res.*, 335 Md. 427, 435 (1994) (quoting *Popham v. State Farm Mut. Ins. Co.*, 333 Md. 136, 140 n.2 (1993)).

In general, a circuit court should dismiss a complaint for a declaratory judgment only if the plaintiffs are not entitled to a declaration of their rights. *Broadwater v. State*, 303 Md. 461, 467 (1985) (stating that "if there were no justiciable controversy a motion to dismiss would lie"). A motion to dismiss may also lie when the case is moot (*id.* at 468), when the plaintiff has no standing (*Christ ex rel. Christ v. Maryland Dep't of Nat. Res.*, 335 Md. at 435), when the plaintiffs have failed to join a necessary party (*Broadwater v. State*, 303 Md. at 469), or when the same issues are awaiting decision in another common-law proceeding. *Haynie v. Gold Bond Bldg. Prods.*, 306 Md. 644, 650-54 (1986).

In summary, a court ordinarily should dismiss a complaint for a declaratory judgment only when the plaintiffs have no right to a declaration at all – even a declaration that they are wrong. *Allied Inv. Corp. v. Jasen*, 354 Md. 547, 556 (1999). "The test of the sufficiency of the bill is not whether it shows that the plaintiff[s] [are] entitled to the declaration of rights or interest in accordance with [their] theory, but whether [they are] entitled to a declaration at all; so, even though the plaintiff[s] may be on the losing side of

22

the dispute, if [they] state[] the existence of a controversy which should be settled, [they] state[] a cause of suit for a declaratory decree." *Shapiro v. Board of Cty. Comm'rs for Prince George's Cty.*, 219 Md. 298, 302-03 (1959).

The court should not have dismissed the claim for a declaratory judgment. Instead, it should have embodied its resolution of the merits in a written declaration. The circuit court erred by not declaring the rights of the parties to this case.

This error, however, is not jurisdictional. *Baltimore Cty. v. Baltimore Cty. Fraternal Order of Police Lodge No. 4*, 439 Md. 547, 566 (2014). We remand the case to the circuit court for entry of judgment consistent with this opinion.

**JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY AFFIRMED IN PART AND VACATED IN PART. CASE REMANDED TO THE CIRCUIT COURT FOR FREDERICK COUNTY FOR THE PURPOSE OF ENTERING A DECLARATORY JUDGMENT CONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED EQUALLY.**